## HOUSTON E. & W. T. RY. CO. v. MATHEWS.
### (No. 1605.)

Court of Civil Appeals of Texas. Beaumont. Jan. 5, 1928.

Rehearing Denied Jan. 11, 1928.

**1. Carriers ⬳320(4)—Whether conductor's assault on passenger was willful or committed in self-defense held for jury.**

In action by passenger against carrier for assault and battery committed by conductor on refusal of passenger to pay second fare, whether assault and battery was willful and unprovoked, or whether it was committed in conductor's self-defense, *held* for jury.

**2. Appeal and error ⬳1064(1)—Instruction defining criminal assault held not prejudicial, in passenger's action against carrier for conductor's assault.**

In action by passenger against carrier for assault and battery committed by conductor, instruction defining assault and battery under Penal Code, though unnecessary, *held* not prejudicial to carrier.

**3. Trial ⬳350(3)—Special issues requiring passenger to prove willful assault by railroad conductor, permitting actual damages, and punitive damages in case assault was unprovoked and willful, held proper.**

Special issues submitted in passenger's action against carrier for conductor's assault, requiring plaintiff to prove by preponderance of evidence commission of assault and issue whether assault was unprovoked and willful, including issue of conductor's self-defense, and permitting award for actual damages sustained by plaintiff, including physical and mental pain and suffering, and diminution of earning capacity and punitive damages in case assault was unprovoked and willful, *held* proper.

**4. Trial ⬳350(2)—Special issues should submit ultimate, and not mere evidentiary, facts.**

Special issues should submit issues of ultimate fact, and issues calling for answer from jury as to mere evidentiary facts are properly rejected.

**5. Trial ⬳351(5)—Refusal of special issues fully covered by special issues submitted is not error.**

Refusal of requested special issues is not error, where matters contained therein are fully covered by special issues submitted.

**6. Carriers ⬳319(3)—$1,500 actual damages to passenger assault by conductor for pain and suffering, headaches, and loss of sleep, and for impaired earning capacity, held not excessive.**

Award of $1,500 to passenger for physical and mental pain on account of injuries and humiliation resulting from alleged conduct of conductor in calling him thief and liar, and hitting him over the head with a lantern, and for resultant chronic headaches and sleeplessness and loss of weight, and for diminished earning capacity, *held* not excessive.

**7. Carriers ⬳321(23)—Instruction permitting jury to consider injured plaintiff's loss of earning capacity held not error under evidence.**

Instruction permitting jury to consider diminution of plaintiff's capacity to earn money in the future *held* not error under evidence in action by passenger against railroad for conductor's assault, resulting in headaches and sleeplessness.

**8. Carriers ⬳319(2)—Willful and unprovoked assault committed by conductor on passenger in discharge of conductor's duty held to permit exemplary damages against carrier without proof of conductor's previous ill will.**

Where railroad passenger conductor, in discharge of his duty, committed unlawful and unprovoked assault and battery on passenger on passenger's refusal to make second payment of fare, jury could award exemplary damages for willful and unprovoked assault, notwithstanding absence of proof of previous ill will or malice towards assaulted passenger on the part of the conductor.

**9. Evidence ⬳129(5)—Evidence that plaintiff, suing carrier for conductor's assault, was aggressor in another fight, held inadmissible as collateral issue.**

In action by passenger against carrier for assault committed by conductor demanding second payment of fare, refusal to permit cross-examination of plaintiff as to details of his last fight, and to permit introduction of evidence to show that plaintiff was the aggressor in that fight, *held* not error, since evidence involved matters entirely collateral.

**10. Appeal and error ⬳206(2), 690(3)—Requiring conductor, claimed to have assaulted passenger, to brand testimony concerning his intoxication as false, held not error under unsatisfactory record and absence of objection.**

In action by passenger against carrier for conductor's assault, requiring conductor to brand testimony of local witnesses as to his intoxication as false, was not shown to be error, where circumstances of its admission were not clearly shown by bill, and where objection that it would prejudice jury on account of their acquaintance with witnesses was raised for first time on appeal.

Appeal from District Court, Angelina County; O. A. Hodges, Judge.

Action by Jared E. Mathews against the Houston East & West Texas Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Garrison & Watson and Baker, Botts, Parker & Garwood, all of Houston, for appellant.

J. J. Collins, of Lufkin, for appellee.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

HIGHTOWER, C. J. This suit was filed by the appellee, J. E. Mathews, in the district court of Angelina county, against appellant, Houston East & West Texas Railway Company, to recover against appellant damages, both actual and exemplary, because of an alleged assault and battery committed upon appellee by appellant's passenger train conductor on or about November 6, 1926, while appellee was a passenger on appellant's train. The substance of the appellee's petition may be stated as follows:

He alleged that on or about November 6, 1926, he purchased from appellant at Lufkin, in Angelina county, three round-trip tickets from Lufkin, Tex., to Shreveport, La., one of the tickets being for himself, and the other two for two ladies, a Mrs. Herrington and a Miss McPherson, who were to accompany him to Shreveport, where they expected to attend a fair then going on at that place, and return to Lufkin, their home. Appellee alleged that he paid the price of the tickets to appellant's ticket agent at Lufkin, and that he and the ladies went to Shreveport, and that, while returning the following night, and after appellant's conductor, one Bert Glass, had taken up the three return trip tickets that appellee had purchased, and after the train had passed the city of Nacogdoches on the return to Lufkin, appellant's conductor, Bert Glass, in charge of the train, came in the coach where appellee was on his seat, and demanded a ticket from appellee. Appellee alleged that he stated to the conductor at the time of the demand that he had already delivered his ticket to the conductor, and that this was disputed by the conductor, and that the conductor still insisted that appellee give him a ticket or pay his fare, or get off of the train. Appellee alleged that he declined to pay any more fare to the conductor, and that he declined to get off the train, whereupon, as he alleged, appellant's conductor denounced him as a crook and a thief and a liar, and struck him over the head several times with a railroad lantern that the conductor then had in his hand; that such assault and battery upon him was willful and unprovoked on the part of appellant's conductor, and that, in consequence of such assault and battery, he was severely and painfully injured, for which he was entitled to recover actual damages and also exemplary damages.

Appellant's answer consisted of a general demurrer and general denial.

The case was submitted to the jury upon the following special issues:

"Special Issue No. 1. Do you find from the preponderance of the evidence that the plaintiff purchased a round-trip ticket on the occasion in question entitling him to transportation from Lufkin, Tex., to Shreveport, La., and return? Answer 'Yes' or 'No,' as you find the facts to be."

To which the jury answered: "Yes."

"Special Issue No. 2. Do you find from a preponderance of the evidence that the plaintiff delivered to defendant's conductor a ticket from Shreveport to Lufkin, after leaving Shreveport, La., and prior to the alleged assault and battery, if any? Answer 'Yes' or 'No,' as you find the facts to be."

To which the jury answered: "Yes."

"Special Issue No. 3. Do you find from a preponderance of the evidence that Conductor Glass did, on or about the 6th day of November, 1926, commit an assault and battery upon the plaintiff, Jared E. Mathews, by then and there striking said Mathews with a railroad lantern? Answer 'Yes' or 'No,' as you find the facts to be."

To which the jury answered: "Yes."

"If you answer the above issue 'No,' then you need not answer any other issue; but, if you answer the above issue 'Yes,' then you will answer the following special issue:

"Special Issue No. 4. Do you find from a preponderance of the evidence that, in the commission of the assault and battery by Conductor Glass upon the plaintiff, if any was committed, that said Glass did so willfully, and that said assault and battery was unprovoked upon the part of plaintiff? Answer 'Yes' or 'No,' as you find the facts to be."

To which the jury answered: "Yes.".

"Special Issue No. 5. Was Conductor Glass acting in the necessary defense of his own person against unlawful violence offered him by plaintiff, at the time of the commission of the assault and battery, if any, as it reasonably appeared to the said Glass, when viewed from his standpoint? Answer 'Yes' or 'No,' as you find the facts to be."

The jury answered this question: "No."

"If you have answered special issues Nos. 1, 2, and 3 'Yes' and special issue No. 5 'No,' and only in that event, you will answer the following special issue, regardless of your answers to special issue No. 4:

"Special Issue No. 6. What sum of money, if paid now, would be a fair and reasonable compensation to the plaintiff for the actual damages, if any, sustained by him as a direct, natural, and proximate consequence of the assault and battery, if any, committed upon him by said conductor? Answer by stating the amount in dollars and cents.

"In passing upon the above issue, and in arriving at the amount of actual damages, if any, sustained by the plaintiff as a direct, natural, and proximate consequence of the assault and battery, if any, committed upon him, you will take into consideration his physical and mental pain and suffering, both past and future, caused by the assault and battery, and the diminished capacity or ability upon the part of the plaintiff occasioned by reason of such assault and battery, to earn money in the future, as a direct result of said assault and battery."

(In answer to special issue No. 6 the jury found that $1,500 would be a fair and reasonable compensation to the plaintiff for the actual damages sustained by him.)

"If you have answered special issue No. 4 'Yes,' and only in that event, then answer the following special issue:

"Special Issue No. 7. What sum of money, if any, do you assess against the defendant in favor of the plaintiff by way of exemplary or punitory damages by reason of the willful and unprovoked assault and battery, if any you find was committed, upon the plaintiff by the de-

fendant? Answer by stating the amount in dollars and cents.

"In passing upon the above issue, you are instructed that you cannot assess any damages by way of exemplary or punitory damages, unless you first find from a preponderance of the evidence that the assault and battery, if any, was committed willfully by said conductor, and was unprovoked upon the part of plaintiff, and only then you may, in the exercise of your discretion, allow such sum by way of punitory or exemplary damages as you may think proper, under the facts and circumstances, and in determining the amount of damages to be awarded, either actual or exemplary, you may take into consideration the manner and conduct of the plaintiff ,towards defendant at the time of the assault; and, if his manner and conduct, in your opinion, amounted to a provocation upon the part of the plaintiff in bringing about the assault, then his damages, actual or exemplary, or both, should be reduced to such sum as in your opinion might seem proper, and, in passing upon both special issue No. 6 and special issue No. 7 submitted herein, you will consider these instructions in regard to mitigation of damages in connection therewith."

In answer to special issue No. 7 the jury allowed plaintiff exemplary damages in the sum of $500.

Upon motion of plaintiff therefór, judgment was rendered and entered in his favor in accordance with the jury's verdict for $1,500 actual damages and $500 exemplary damages, and it is from that judgment that this appeal is prosecuted.

The assignments of error challenge the correctness of the court's charge as a whole and in several parts, the refusal of the trial court to submit to the jury seven special issues requested by appellant, the refusal of the court to submit to the jury four special charges requested by appellant, the ruling of the trial court refusing to admit certain evidence offered by appellant, and the verdict of the jury as being excessive as to actual damages, and as being wholly without support as to exemplary damages.

The substance of the evidence bearing upon the issue of fact as to whether appellant's conductor committed an unprovoked and willful assault and battery upon appellee was as follows:

Appellee testified, in keeping with his, pleadings, that early in the morning, about 5 o'clock, on the 6th day of November, 1926, he purchased three round-trip tickets from the city of Lufkin, in Angelina county, Tex., to the city of Shreveport, in Louisiana, one for himself, and the other two for Mrs. Herrington and Miss McPherson, the ladies who accompanied him on the trip to Shreveport; that upon the return trip to Lufkin the following night appellant's conductor came through the train, and took up the three return trip tickets that he had purchased, shortly after the train had started from the city of Shreveport; that, after the train had passed the city of Nacogdoches a short dis-

tance that night, and before the city of Lufkin was reached, appellant's conductor, Mr. Glass, came up to appellee, where he was reclining on a seat in the passenger coach, and demanded of him a ticket; that appellee stated to Conductor Glass that he had already given him his ticket shortly after the train left Shreveport, but that Conductor Glass denied that fact, and insisted upon a ticket, or that appellee pay his fare or get off of the train; that appellee declined to pay his fare, and declined to get off of the train; and that thereupon Conductor Glass abused him, calling him a liar, a crook, and a thief, and struck him over the head with a railroad lantern several times, inflicting painful and serious injuries upon him; that appellee did not abuse the conductor, nor use any vile or profane language toward him, and made no attempt to assault him in any way, but only refused to again pay his fare after he had already done so.

Appellee then testified to the extent of his injuries, stating that he was struck several times over the head with a railroad lantern by appellant's conductor, and that he had to have medical attention and treatment of a physician some 15 or 20 times in consequence of his injuries, and that he had suffered much physical pain, as well as humiliation and mental anguish, in consequence of the assault and battery upon him, and that he still suffered even up to the time of the trial, which was some seven months after the alleged assault and battery, from the injuries that were inflicted upon him by appellant's conductor, and, in fact, his testimony was to the effect that the injuries inflicted upon him had resulted in chronic sick headache, giving him severe pain when such attacks would come on, and resulting in his being unable to sleep at night as he had been accustomed to do prior to the injuries, and that, in consequence of the injuries inflicted upon him, he had been reduced in weight at the time of the trial some 20 or more pounds.

[1] Appellant's conductor, Mr. Glass, testified, in substance, that appellee did not buy a return trip ticket from Lufkin to Shreveport, and that he did not take up any ticket from appellee after leaving Shreveport that night. The conductor testified, in substance, that appellee only went to the city of Nacogdoches from Lufkin on the morning that the tickets were purchased, and that when the train got back to Nacogdoches that night, appellee boarded the train without a ticket, and was trying to get back to Lufkin without paying his fare. He further testified that, in demanding of appellee a ticket as the train left Nacogdoches on return to Lufkin that night, he knew or believed that appellee had not given him any ticket for his fare back to Lufkin, and that he was merely discharging his duty as appellant's conductor in demanding of appellee a ticket, and that he did so re-

spectfully, and did not use any vile or profane language or epithets to appellee when he demanded the ticket, and did not assault him in any way, but that appellee grew angry and violent when he demanded of him a ticket after the train was a short distance from Nacogdoches that night, and commenced cursing and abusing him, and calling him vile names, and applying to him vulgar epithets, and that appellee, in fact, made an assault and battery upon him, and that what he did was only in defense of himself against the assault and battery upon him by appellee. This states the substance of the evidence bearing upon the issue of fact as to whether the assault and battery committed by appellant's conductor upon appellee was willful and unprovoked. It will be seen at once, from this statement, that the issue as to whether the assault and battery committed by the conductor was willful and unprovoked, or whether it was committed, if committed, in the conductor's own self-defense, was one of fact for the jury, and that issue, as we have shown, was determined by the jury in favor of appellee, and the evidence is amply sufficient to sustain the jury's finding. Indeed, this is not questioned, as we view appellant's brief by counsel.

[2, 3] We have carefully considered all assignments of error and propositions attacking the court's charge as a whole or in part, and have concluded, without discussing them, that none of them ought to be sustained. It is true the court did define assault and battery as defined by our Penal Code 1925, art. 1138, and this was unnecessary, but we are unable to see how this could have resulted in any prejudice to appellant. It will be seen from the special issues submitted that the jury, in answering them, was confined to whether or not appellant's conductor committed an assault and battery upon appellee, as alleged by him, by striking him with a railroad lantern. We have already copied the special issues submitted to the jury, from which it will be seen, we think, that the case was fairly submitted, and that the jury was properly instructed in connection with each special issue where instruction was necessary, and it occurs to us that appellant has no reason to complain of any of the special issues submitted by the court, either as to form or substance. They are as favorable to appellant as the evidence in the case would warrant. We therefore overrule all assignments of error attacking the court's charge in whole or in part.

[4, 5] As we have stated above, appellant requested the submission of seven special issues, in addition to those submitted by the court. Most of these, if not all, called for an answer from the jury as to mere evidentiary facts, and not ultimate fact issues. Therefore the trial court was correct in refusing their submission. This court has had

occasion several times to deal with requested special issues of this character, and our views as to such issues of an evidentiary nature will be found expressed in the comparatively recent case of Anderson Bros. v. Parker Const. Co., 254 S. W. 642. If any of these requested special issues did not call for an answer as to mere evidentiary matters, then such were fully covered by the special issues submitted by the court. We therefore overrule all contentions made by appellant that the court was not correct in refusing to give any of these requested special issues.

As to the four special charges requested by appellant, we have to say, after thoroughly considering them, that none of them announce a correct proposition of law as applied to the facts of this case, and, besides, they were argumentative and upon the weight of the evidence, and the court was correct in refusing them.

[6, 7] We overrule appellant's contention that the amount of actual damages awarded by the jury is excessive. Appellant's contention, by way of argument in this connection, is that there was no evidence that appellee's capacity to earn money in the future had been in the least diminished, because there was no evidence that he had lost any time on account of his injuries, and that, in the absence of such proof, the court should not have told the jury, as he did, in substance, that in assessing actual damages they might take into consideration appellee's diminished capacity to earn money in the future, and that the court was in error in so instructing the jury, and that there was no basis for a finding by the jury of any diminished capacity on the part of appellee to earn money in the future. We have already stated the extent of appellee's injuries, as shown by himself, and will not repeat it here. It is true, as argued by able counsel for appellant, that the physician, Dr. Denman of Lufkin, who treated appellee for his injuries, was not placed upon the witness stand to testify as a physician to the extent of appellee's injuries, but it does not follow from that fact that the jury was unauthorized to find the extent of his injuries from his own testimony. There is no showing or suggestion by appellant as to why it did not place Dr. Denman upon the stand, if counsel for appellant thought that his evidence would be favorable to it on the question of the extent of appellee's injuries. We think that the evidence in this record is sufficient to sustain the jury's finding as to the extent of appellee's actual damages.

[8] Counsel for appellant further insist that the jury's verdict for exemplary damages is wholly without support, for the reason, mainly, that there was no evidence of previous ill will or malice on the part of appellant's conductor towards appellee. Counsel for appellant contend that, before the

jury could find in favor of appellee for exemplary damages, previous ill will or malice on the part of Conductor Glass was necessary to be shown. We think that counsel are mistaken in this contention, for we are of the opinion that, where a railroad passenger conductor, while in discharge of his duty, commits a willful and unprovoked assault and battery upon a passenger upon his train, the railroad company may be held for exemplary damages for such willful and unprovoked assault upon one of its passengers by its conductor, without proof of previous ill will or malice towards the assaulted passenger on the part of the conductor. Appellant's contention in this connection is overruled.

[9] While appellee was on the stand as a witness in this case, he was asked on cross-examination as to the number of fights he had had, and he stated, in substance, that he had had several fights since he had been a man, but that he did not provoke them. He was then asked by counsel for appellant when he had the last fight, to which he answered that his last fight was just a short while before the alleged assault and battery in this case, and he stated that in that fight he was not the aggressor, but was simply trying to discharge his official duty, and was assaulted by the person that he was dealing with. Thereupon counsel for appellant offered to go into the details of this last fight, and wanted to be permitted to introduce evidence to show that appellee was the aggressor in that fight, and that his assault and battery upon his adversary was willful and unprovoked, and this the court refused to permit. We think the court was correct in this ruling. 'If it was permissible to show that appellee had had a number of fights since he became a man, which we do not find it necessary to decide, yet the details of the fights as to who was the aggressor, etc., could not be gone into, because that would be trying matters entirely collateral to the case on trial, and might result in interminable confusion and delay in the trial of the case. Counsel for appellant have not been able to cite any authority contrary to these views. The contention is overruled.

[10] The two ladies, Mrs. Herrington and Miss McPherson, were witnesses in this case, and they testified, in substance, among other things, that, when Conductor Glass came through the train taking up tickets on the return from Shreveport to Lufkin on the night in question, they smelled whisky on his breath. After appellee had rested, appellant put Conductor Glass on the witness stand, and, while he was there, counsel for appellee, on cross-examination, asked him, in substance, if he had heard the two ladies, Mrs. Herrington and Miss McPherson, testify, and if he had heard them state that they smelled whisky on his breath the night of the alleged assault. Conductor Glass stated that he did

hear this evidence of the two ladies, and he was then asked, in substance, if the testimony of these ladies was false or true as to the smell of whisky on his breath, and over appellant's objection, as counsel for appellant contend, the conductor was forced to answer that such testimony was false. There is no bill of exceptions in this record touching this matter, but we are referred by counsel in their brief to pages 38 and 39 of the statement of facts, where they claim this matter was properly saved for review by this court. We have gone to the statement of facts, but the showing there made in this connection is so meager and brief that it is wholly unintelligible as a bill of exceptions. Indeed, the point that counsel for appellant now make in their brief was not offered as a reason for the exclusion of Conductor Glass' statement as to the falsity of the testimony of the two ladies. They contend in the brief now that it was prejudicial to appellant to force Conductor Glass to testify that the evidence of the ladies touching the whisky on his breath was false, for the reason that these ladies lived in the town of Lufkin, and the jury trying the case were citizens of and near the town of Lufkin, and that they would naturally be prejudiced against appellant, if its conductor should be forced to denounce as false the testimony of these two home ladies.

It would have been better and more in keeping with the rule if the conductor had been permitted to deny that the ladies smelled any whisky on his breath, without asking him as to whether their testimony was false or true, but, because of the way in which appellant has sought to save the point by bringing it up in the statement of facts in such a meager way that this court is unable to determine what objection was offered by appellant to this testimony, we decline to reverse this case on account of its admission. In other words, counsel for appellant in their brief in this court are now urging a reason as to why the testimony of Conductor Glass would be inadmissible that they did not urge at the time the testimony was offered. The objection urged at the time was, in substance, that the ladies had testified to a number of things, and that to permit Conductor Glass to testify that their evidence was false was too general, or that he could not give an intelligible answer, in view of all the things that the ladies had testified to. This is about the substance of the objection made by counsel at the time the conductor was interrogated about this matter. The bill is not in shape to show error.

We think the above conclusions have the effect to dispose of all contentions made by appellant for reversal of this judgment, and that none of them should be sustained.

The judgment is affirmed.