734 P.2d 1030

Richard BROWNING, individually and on Behalf of all persons similarly situated, Plaintiff/Appellant,

v.

James CORBETT, Clerk of the Court of Pima County, Arizona; James Kirk, County Treasurer of Pima County, Pima County, Arizona; Douglas Patino, Director of Arizona Department of Economic Security; Dr. Lloyd Novick, Director of Arizona Department of Health Services; Vivian Kringle, Clerk of the Superior Court of Maricopa County; and Glenn O. Stapley, County Treasurer of Maricopa County, Arizona, Defendants/Appellees.

No. 2 CA–CIV 5776.

Court of Appeals of Arizona, Division 2, Department A.

Nov. 20, 1986.

Reconsideration Denied Jan. 6, 1987.

Review Denied March 24, 1987.

dismissal of his complaint, filed as a class action, which sought an injunction and an accounting. He contends that A.R.S. § 25–311.01(E) is unconstitutional. This subsection requires both the petitioner and respondent in a marriage dissolution action to pay, in addition to the court filing fees, a $12.00 fee which is distributed between the domestic violence shelter fund and the child abuse prevention and treatment fund. We hold that the statute is constitutional and affirm.

Browning alleged in his complaint that he filed a petition for dissolution of his marriage in July 1984 and was forced to pay the fee (then $6.00) before the clerk would accept the petition for filing. He then filed suit on behalf of himself and all persons similarly situated who had paid the fee since the effective date of the statute, July 24, 1982. He later filed an order to show cause, seeking to have the statute declared unconstitutional, to enjoin its enforcement, to require appellees to account for the funds collected under it, and to have the class certified. Injunctive relief was denied and a class was certified in August 1985. The order certifying the class was set aside in December 1985. Both parties then filed motions for summary judgment, and appellees' motion was granted.

A.R.S. § 25–311.01(E) provides as follows:

In addition to the other fees paid pursuant to this section, at the time of filing the petition, each petitioner and respondent, on his appearance, shall pay the clerk an additional twelve dollars. The clerk shall monthly transmit the monies collected pursuant to this subsection to the county treasurer, who shall monthly transmit the monies to the state treasurer who shall transmit two-thirds of the monies to the department of health services for deposit in the domestic violence shelter fund established pursuant to § 36–3002 and one-third of the monies to the department of economic security for deposit in the child abuse prevention and treatment fund established pursuant to § 8–550.01.

Mesch, Clark & Rothschild, P.C. by Douglas H. Clark, Jr., Tucson, for plaintiff/appellant.

Robert K. Corbin, Atty. Gen. by Joan R. Mendelson and James P. Lagattuta, Tucson, for defendants/appellees.

## OPINION

FERNANDEZ, Judge.

Appellant Richard Browning appeals from the trial court's entry of summary judgment in favor of appellees and the

The subsection was added in 1982. It originally required a fee of $6.00, which was increased to $12.00 in August 1984. The fee requirement originally applied only to parties in dissolution actions. In August 1984 it was extended to parties in legal separation actions as well. Appellant contends that the fee is a violation of equal protection and due process and that it constitutes special legislation in derogation of the Arizona Constitution.

## EQUAL PROTECTION AND DUE PROCESS CHALLENGE

■ Since appellant's arguments on equal protection and due process are intertwined and are based primarily on the same case, we will address them jointly. When an equal protection challenge is made, the court initially must determine whether the statute under scrutiny discriminates against suspect classes or encroaches upon fundamental rights. *Murillo v. Bambrick*, 681 F.2d 898 (3d Cir.), cert. denied, 459 U.S. 1017, 103 S.Ct. 378, 74 L.Ed.2d 511 (1982). To date, the United States Supreme Court has deemed only classifications based upon race, national origin and perhaps sex, alienage and illegitimacy as suspect. See *Murillo v. Bambrick*, supra. Since no suspect class or fundamental right is involved here, the "strict scrutiny" test outlined in *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), is not applicable. Instead, as appellant concedes, the rational basis test applies. See, e.g., *Schweiker v. Wilson*, 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981).

■ Under the rational basis test, "statutes in the economic, social welfare, or regulatory fields are subjected to far lesser scrutiny, and will be upheld unless not rationally related to legitimate public ends." *Murillo*, supra, 681 F.2d at 901. In Arizona, the rational basis test permits the legislature substantial leeway in enacting legislation.

[I]t [the rational basis test] upholds legislative regulation which imposes burdens on one class but not another so long as (1) the court can find some legitimate state interest to be served by the legislation and (2) the facts permit the court to conclude that the legislative classification rationally furthers the state's legitimate interest.

*Kenyon v. Hammer*, 142 Ariz. 69, 78, 688 P.2d 961, 970 (1984). Appellant concedes that both the domestic violence shelter fund and the child abuse prevention and treatment fund serve a worthy purpose, but he contends that the source of funding designated by the legislature creates an unreasonable and arbitrary classification and that it imposes a burden on the class which is not imposed on others.

"[T]he Equal Protection Clause is not violated if any state of facts can be reasonably conceived to sustain the classification." *State v. Levy's*, 119 Ariz. 191, 192, 580 P.2d 329, 330 (1978). Although we do not know the exact intent of the legislature in enacting this statute, it is not difficult to envision a rational basis for its enactment. See *Flagstaff Vending Co. v. City of Flagstaff*, 118 Ariz. 556, 578 P.2d 985 (1978). The state has a legitimate interest in providing assistance to victims of domestic violence and in attempting to reduce the occurrence of child abuse. Since victims of domestic violence and child abuse frequently come from broken homes, it is rational to raise funds for programs to assist such victims by requiring parties to a marriage dissolution action to pay an additional fee at the time of filing.

Appellant also overlooks the fact that neither fund is supported solely by the fees collected from petitioners and respondents in dissolution and legal separation actions. The domestic violence shelter fund is also funded by 80% of a $10.00 fee imposed upon applicants for marriage licenses. A.R.S. §§ 36–3002; 12–284(A)(16). The 20% remainder of that fee is distributed to the child abuse prevention and treatment fund.[1] Thus, the class on which the burden

---

1. The fund also receives contributions from income tax refunds pursuant to A.R.S. § 43–613. Since those are voluntary contributions, they are not part of appellant's challenge of the statute.

is imposed is broader than he acknowledges.

Browning relies on *Crocker v. Finley*, 99 Ill.2d 444, 77 Ill.Dec. 97, 459 N.E.2d 1346 (1984), in which the Illinois Supreme Court held a similar statute unconstitutional. In that case, the court struck down a statute which required circuit court clerks to collect a $5.00 fee from petitioners for marriage dissolution. The fee was used to fund shelters and other services for victims of domestic violence. The court found that the statute was unconstitutional primarily because it infringed upon the right to obtain justice freely, a right secured by a section of the Illinois constitution. Arizona has no comparable provision, although the constitution does guarantee all citizens equal access to the courts. Ariz. Const. art. 2, § 13; *Hampton v. Chatwin*, 109 Ariz. 98, 505 P.2d 1037 (1973). The fee in question here does not prohibit access to the courts since, as the trial court noted, an indigent seeking marriage dissolution in Arizona can obtain a waiver of the filing fees, see *Tahtinen v. Superior Court, Pinal County*, 130 Ariz. 513, 637 P.2d 723 (1981), cert. denied, 454 U.S. 1152, 102 S.Ct. 1021, 71 L.Ed.2d 308 (1982); see also *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). Thus, the holding in *Crocker* is not applicable here.

Appellant also complains that the fee is improper because it serves to raise funds for a program that is not court-related. An additional basis for the Illinois Supreme Court's finding of unconstitutionality in *Crocker v. Finley*, supra, was the fact that the program for which the fee was collected did not relate to the operation and maintenance of the courts. Again, however, that finding was based on the Illinois constitutional right to obtain justice freely. Since there is no comparable Arizona provision, there is no requirement here that the fee be used only for court-related programs. Appellant has cited no authority, and we have found none, interpreting either the federal or state constitutions which requires court filing fees to be applied only to court-related functions.

Browning contends we must find the fee violates the due process clause because the Illinois Supreme Court in *Crocker v. Finley*, supra, found the fee involved there was an arbitrary exercise of the police power. We, of course, are not bound by a decision of the Illinois Supreme Court interpreting an Illinois statute under its constitution. We have found that a rational relationship exists between the subsection in question and a constitutionally permissible objective. See *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963) (Harlan, J., concurring).

Having determined that a rational basis exists for the imposition of the fee, and in light of the principle that "[e]very reasonable doubt is to be resolved in favor of the constitutionality of legislative enactments," *State v. Double Seven Corp.*, 70 Ariz. 287, 293, 219 P.2d 776, 779 (1950), we hold the statute violates neither the equal protection clause nor the due process clause.

### SPECIAL LAW CONTENTION

Appellant's final argument is that the statute is unconstitutional because it constitutes special legislation in violation of article 4, part 2, § 19 of the Arizona Constitution. That section prohibits local or special laws, among other things, in the granting of divorces and in the assessment and collection of taxes. Browning contends that the fee in question not only restricts the granting of divorces but also constitutes a tax on litigation. We disagree. Our supreme court has explained the distinction between a general law and a special law as follows:

> A law is general, and thus permissible, if it confers rights and privileges or imposes restrictions upon all members of a given class, when the classification has a reasonable basis.... A special law applies only to certain members of a class or to an arbitrarily defined class which is not rationally related to a legitimate legislative purpose.

*Arizona Downs v. Arizona Horsemen's Foundation*, 130 Ariz. 550, 557, 637 P.2d 1053, 1060 (1981). Since the statute in question applies equally to all petitioners and respondents in both marriage dissolution and legal separation actions, the only

question we must answer is whether that class is arbitrarily defined and not rationally related to a legitimate legislative purpose. Clearly, the legislature may legitimately provide programs for victims of domestic violence and child abuse under its authority to provide for the general welfare. As we indicated in our discussion of appellant's equal protection challenge, it is not difficult to discern a rational relationship between such victims and parties to marriage dissolution actions. That relationship applies as well to applicants for marriage licenses, the other members of the class upon which the fee is imposed. The legislature is undoubtedly aware of the high divorce rate that exists in this state. It could reasonably have determined that the great majority of persons who will benefit from the two funds will come either from persons who marry or divorce in this state or from the children of such relationships. We hold that the legislation is not a special law but is one rationally related to a legitimate legislative purpose.

The judgment in favor of ·appellees is affirmed.

HATHAWAY, C.J., and HOWARD, P.J., concur.