692 So.2d 1038 (1997)
SAFETY NET FOR ABUSED PERSONS
v.
Honorable Robert SEGURA and Honorable Kathryn Boudreaux.
No. 96-CA-1978.
Supreme Court of Louisiana.
April 8, 1997.
*1039 Dennis Ray Stevens, Gibbens, Blackwell & Stevens, New Iberia, for Applicant.
Victoria Reed, Baton Rouge, Rebecca Mims Kirk, Abbeville, for Respondent.
MARCUS, Justice.[*]
Safety Net for Abused Persons, Inc. ("SNAP"), filed a petition for a writ of mandamus in the district court directing Judge Robert L. Segura, City Court Judge for the City Court of New Iberia, and Kathryn D. Boudreaux, Clerk of Court for the City Court of New Iberia, to enforce the provisions of La. R.S. 13:1906. La. R.S. 13:1906 directs the clerk of the city courts of New Iberia and Jeanerette, and the municipal courts of Delcambre and Loreauville, to collect an additional fee in civil and criminal cases to support a program to aid victims of domestic violence. Specifically, the statute directs that the money collected be deposited in a special fund to benefit SNAP, a domestic violence program and shelter serving Iberia Parish. Judge Segura had refused to collect the fee mandated by La. R.S. 13:1906 since the effective date of the statute. The trial judge issued a writ of mandamus directing the defendants to comply with the provisions of La. R.S. 13:1906, rejecting the defendants' constitutional challenge to the statute. The defendants perfected a suspensive appeal from the trial court's judgment. The court of appeal ruled that La. R.S. 13:1906 violated La. Const. art. VII, § 14 and constituted an infringement on the powers of the judiciary under the constitutional separation of powers doctrine. The court of appeal thus vacated and set aside the writ of mandamus directing the defendants to comply with the requirements of La. R.S. 13:1906.[1] We *1040 granted SNAP's application and docketed the case as an appeal.[2] La. Const. art. V, § 5(D)(1).
The issue presented for our consideration is whether La. R.S. 13:1906 violates La. Const. art. VII, § 14 or the separation of powers doctrine found in La. Const. art. II, § 2.
The Louisiana Legislature enacted La. R.S. 13:1906 in 1992. It provides:
A. In addition to all other fees and costs now or hereafter provided by law, the clerk of the city courts of New Iberia and Jeanerette, and the municipal courts of Delcambre and Loreauville, except as otherwise provided by law and subject to the provisions of Code of Civil Procedure Article 5181 et seq., shall collect from every person filing any type of civil suit or proceeding a fee of three dollars per filing. In respect to the municipal courts, the fee shall be in addition to the maximum court costs provided for in R.S. 33:441(a).
B. In each criminal proceeding in which a fine is imposed or court costs are ordered to be paid, an additional fee of three dollars shall be collected by the clerk of the city or municipal court, which shall be in addition to all other fines, costs, or forfeitures lawfully imposed.
C. The clerk shall remit all funds collected pursuant to this Section for deposit in a special fund, which is hereby designated as "SNAP Shelter Fund for Iberia Parish". The expenditure of the funds shall be at the discretion of the board of directors of the local family violence program, Safety Net for Abused Persons, Inc. All funds shall be subject to and included in the program's annual audit. A copy of the audit shall be filed with the legislative auditor who shall make it available for public inspection.
The court of appeal found that La. R.S. 13:1906 violates La. Const. art. VII, § 14, which provides, in pertinent part:
(A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. Neither the state nor a political subdivision shall subscribe to or purchase the stock of a corporation or association or for any private enterprise.
(B) Authorized Uses. Nothing in this Section shall prevent (1) the use of public funds for programs of social welfare for the aid and support of the needy....
(C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
Specifically, the court of appeal concluded that La. R.S. 13:1906 violates Section 14(A) because that section prohibits a political subdivision from donating funds to nonprofit corporations. However, this conclusion disregards Sections 14(B) and 14(C), which clearly authorize the legislature to use public funds for social programs supporting the needy and to engage in cooperative endeavors with private entities in furtherance of a public purpose.
The state has entered into a contract with SNAP, a private non-profit corporation, to provide counseling and shelter for domestic abuse victims, a 24-hour crisis hotline, domestic abuse prevention programs, and rape crises intervention, among other services. SNAP thus provides valuable services for the social welfare of those in need, victims of domestic abuse. Under Section 14(B), the Legislature is free to use public funds for such social programs.[3] Therefore, La. R.S. 13:1906 does not violate La. Const. art. VII, § 14(A) because the services provided by SNAP fall under the exceptions established in Sections 14(B) and 14(C).
*1041 The court of appeal also found that La. R.S. 13:1906 violates the Louisiana Constitution because the law imposes legislative functions on the judicial branch of government. The court of appeal concluded that "[t]he judicial function does not include the collection of fines and costs for the purpose of facilitating the objectives of these [social service] organizations, no matter how noble their purpose."
The separation of powers doctrine is found in Article II of the Louisiana Constitution. La. Const. art. II, § 2 prohibits any one of the three branches of government from exercising power belonging to another branch. La. Const. art. II, §§ 1 and 2 establish the basis for the recognition of inherent powers in the judicial branch which the legislative and the executive branches cannot abridge. Konrad v. Jefferson Parish Council, 520 So.2d 393, 397 (La.1988); Singer Hutner Levine Seeman & Stuart v. Louisiana State Bar Association, 378 So.2d 423, 426 (La.1979). Under the doctrine of inherent powers, courts have the power (other than those powers expressly enumerated in the constitution and the statutes) to do all things reasonably necessary for the exercise of their functions as courts. The inherent powers of the judicial branch necessarily encompass the authority to administer the business of the courts. Konrad, 520 So.2d at 397.
We recognize that crystal clear distinctions among the branches of government are not always possible or desirable. The practical aspects of governing require flexibility and make some overlapping inevitable. Consequently, this court will cooperate with the legislative and executive branches of government unless it interferes with the effective administration of justice. With respect to legislation that has an impact on the judicial system, this court will uphold legislative acts passed in aid of the judiciary's inherent power, but will strike down statutes which tend to impede or frustrate its authority. Singer, 378 So.2d at 426; Louisiana State Bar Association v. Connolly, 201 La. 342, 355, 9 So.2d 582, 586 (1942).
With these precepts in mind, we turn to an examination of the statute at issue. La. R.S. 13:1906 directs the clerk of the city courts of New Iberia and Jeanerette, and the municipal courts of Delcambre and Loreauville to collect an additional fee of three dollars per filing for every type of civil suit filed and in every criminal case where costs, fines, or forfeitures are imposed. The clerk is then obligated to remit the funds to SNAP. It is important to determine at the outset whether the three dollar "fee" imposed by the statute in question is in reality a tax. The nature of a charge is determined not by its title, but by its incidents, attributes and operational effect. Thus, the nature of a charge must be determined by its substance and realities, not its form. Gallaspy v. Washington Parish Police Jury, 94-1434, p. 3 (La.11/30/94); 645 So.2d 1139, 1141; Reed v. City of New Orleans, 593 So.2d 368, 371 (La.1992).
Although the statute refers to the charge as a "fee," we find that it is in reality a tax. A charge that has as its primary purpose the raising of revenue, as opposed to the regulation of public order, is a tax. Moreover, a tax is a charge that is unrelated to or materially exceeds the special benefits conferred upon those assessed. Audubon Insurance Co. v. Bernard, 434 So.2d 1072, 1074 (La.1983); 4 Cooley, The Law of Taxation, Ch. 29, § 1784 (4th ed.1924). The money collected pursuant to La. R.S. 13:1906 goes, not to court services nor to any other entity associated with the judicial system, but to a private, nonprofit corporation to be used at its discretion for domestic violence programs. The charge is thus not a fee assessed to defray the expenses of litigation or to support the court system. Rather, it is a revenue raising measure designed to fund a particular social program. Therefore, the question before us is whether the legislature may impose a tax on litigants that is collected by the judiciary to go directly to a private non-profit corporation to fund a social welfare program for victims of domestic abuse.
There are no Louisiana cases dealing with the constitutionality of such litigation tax statutes; however, a few other states have addressed statutes analogous to the one at *1042 issue in this case. See Farabee v. Board of Trustees, Lee County Law Library, 254 So.2d 1 (Fla.1971) (fee for law library); Crocker v. Finley, 99 Ill.2d 444, 77 Ill.Dec. 97, 459 N.E.2d 1346 (1984) (fee to support domestic violence program); Ali v. Danaher, 47 Ill.2d 231, 265 N.E.2d 103 (1970) (fee for law library); Wenger v. Finley, 185 Ill. App.3d 907, 133 Ill.Dec. 782, 541 N.E.2d 1220 (1st Dist.), appeal denied, 127 Ill.2d 644, 136 Ill.Dec. 610, 545 N.E.2d 134 (1989) (fee to support an alternative dispute resolution center); LeCroy v. Hanlon, 713 S.W.2d 335 (Tex.1986) (fee for state's general revenue fund). These courts have all followed the same analysis: to pass constitutional muster, court filing fees must be related to the costs of the administration of justice.
Courts have analyzed statutes imposing additional filing fees on litigants to fund extra-judicial or quasi-judicial programs under the constitutional provision guaranteeing access to courts and to a lesser extent under the constitutional separation of powers provision. After an extensive discussion of the purpose and history of the Texas state constitution's access to courts provision, the Texas Supreme Court held:
[F]iling fees that go to state general revenuesin other words taxes on the right to litigate that pay for other programs besides the judiciaryare unreasonable impositions on the state constitutional right of access to the courts. Regardless of its size, such a filing fee is unconstitutional for filing fees cannot go for non court-related purposes. LeCroy, 713 S.W.2d at 342.
Likewise, the Illinois Supreme Court concluded that "[i]f the right to obtain justice freely is to be a meaningful guarantee, it must preclude the legislature from raising general revenue through charges assessed to those who would utilize our courts." Crocker, 77 Ill.Dec. at 102, 459 N.E.2d at 1351.
Louisiana's access to the courts provision is comparable to other states' open courts provisions. It provides:
All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights. La. Const. art. I, § 22.
This provision, like the Fourteenth Amendment to the United States Constitution, protects an individual's access to the judicial process. Where access to the judicial process is not essential to the exercise of a fundamental right, the legislature is free to restrict access to the judicial machinery if there is a rational basis for that restriction. Bazley v. Tortorich, 397 So.2d 475, 485 (La. 1981); Everett v. Goldman, 359 So.2d 1256, 1268 (La.1978).
Courts have also confronted challenges to certain filing fee statutes based on the separation of powers doctrine. Like the access to the courts provision, the separation of powers doctrine mandates a reasonable relationship between the fee imposed and the costs of the administration of justice. A fee that is unrelated to the administration of justice necessarily impinges on the efficient administration of justice. See Ali, 265 N.E.2d at 105-06 (upholding a statute imposing a filing fee for a law library in the face of a separation of powers challenge because the fee contributes "to a proper and even improved administration of justice"); Wenger, 133 Ill. Dec. at 788-90, 541 N.E.2d at 1226-28 (finding that a filing fee to support a non-profit dispute resolution center does not violate separation of powers because the centers "will be used to improve the efficient administration of the courts").
Following the trend restricting the imposition of court fees to instances where they fund functions of the judicial system, we hold that court filing fees may be imposed only for purposes relating to the administration of justice. This requirement is inherent in our constitutional right of access to the courts and the constitutional separation of powers doctrine. Moreover, our clerks of court should not be made tax collectors for our state, nor should the threshold to our justice system be used as a toll booth to collect money for random programs created by the legislature.
In light of our holding, we must next determine whether the fee imposed by La. R.S. 13:1906 is sufficiently related to the *1043 administration of justice to pass constitutional muster. Applying the constitutional standards derived from the access to courts and separation of powers provisions, other state courts have rejected as unconstitutional several taxes disguised as filing fees, finding that they were unrelated to the administration of justice. In a case similar to the instant case, the Illinois Supreme Court found that a statute imposing an additional five dollar filing fee to fund shelters and other services for victims of domestic violence was unconstitutional as an unreasonable interference with the petitioners' access to the courts, even where the fee was imposed only on petitioners for dissolution of marriage.[4]Crocker, 77 Ill.Dec. at 101, 459 N.E.2d at 1351. The court enunciated the general rule that "court filing fees and taxes may be imposed only for purposes relating to the operation and maintenance of the courts." The court concluded that "[d]issolution-of-marriage petitioners should not be required, as a condition of their filing, to support a general welfare program that relates neither to their litigation nor to the court system." The court acknowledged that the counseling and support services the funds provided for domestic abuse victims might enable the victims to seek redress through the court system, but found that connection to be too remote to save the statute from its constitutional infirmities. Id. See also LeCroy, 713 S.W.2d at 342 (holding that a statute imposing a $40 filing fee to go to state general revenues was an unconstitutional tax on the right to litigate because the funds paid for programs beside the judiciary).
By contrast, several courts have upheld statutes imposing filing fees devoted to defraying the costs of the administration of justice. In Farabee v. Board of Trustees, Lee County Law Library, the Florida Supreme Court found that a statute imposing an additional three dollar filing fee for the provision and maintenance of a law library for the use of the courts and the public was constitutional. 254 So.2d at 3. In upholding the law library fee, the court reasoned that an adequate law library for use by the courts, lawyers and litigants "is essential to the administration of justice today, and it is appropriate that its cost be assessed against those who make use of the court systems...." Id. at 5. See also Ali, 265 N.E.2d at 106 (also upholding the constitutionality of a law library fee as a reasonable expense related to litigation); Wenger, 133 Ill.Dec. at 787, 541 N.E.2d at 1225 (finding that a one dollar additional filing fee to fund a non-profit dispute resolution center is constitutional because it is related to the "operation and maintenance of the courts").
It should be emphasized that under our holding court fees are usually constitutional. Litigation may not be without reasonable expense. However, where there is a statute, such as the one at issue here, imposing a tax on all civil filings to fund a program far removed from the judicial process, it must fall. We find that La. R.S. 13:1906 imposes an unconstitutional filing fee in violation of the right of access to the courts and of the separation of powers doctrine because its purposeto fund domestic abuse services is unrelated to the administration of justice. While domestic abuse programs are indisputably worthy and necessary in society today, they are essentially social welfare programs that cannot be funded with filing fees that are imposed on all civil suits and collected by the judiciary as mandated by La. R.S. 13:1906.[5]
SNAP provides a myriad of laudable services for victims of domestic abuse, the primary ones being shelter, counseling and information for abuse victims. However, these *1044 services have no logical connection to the judicial system. SNAP is not a part of the judicial branch, it serves no judicial or even quasi-judicial function, it is not a program administered by the judiciary, and it is not a link in the chain of the justice system. Furthermore, La. R.S. 13:1906 imposes a fee on all civil suits filed; thus, the purpose of the fee bears no relationship to the nature of the filing against which it is assessed. Also, there is no chance that any of the revenue raised by the statute will ultimately be used to fund the judicial system. Under the scheme imposed by La. R.S. 13:1906, the fees collected go directly to SNAP, where they remain to be used at SNAP's discretion. Moreover, the possibility that some persons who seek SNAP's assistance may eventually seek redress through the court system, and that the services SNAP provides may enable some of these persons to gain access to the judicial process, is too remote and speculative to save the statute from its constitutional infirmities.
La. R.S. 13:1906 also imposes an additional fee of three dollars in every criminal proceeding in which a fine or forfeiture is imposed or court costs are ordered. Although the imposition of a fee in a criminal context in addition to a fine or court costs presents a slightly different issue than a charge imposed as a filing fee necessary to gain entry to the judicial process, our analysis and conclusion are substantially the same. "[A]s long as the statutory criminal assessments are reasonably related to the costs of administering the criminal justice system, its imposition will not render the courts `tax gatherers' in violation of the separation of powers doctrine." State v. Claborn, 870 P.2d 169, 171 (Okl.Cr.1994) (finding that a fingerprinting fee, a victims compensation assessment, and a drug assessment imposed on a criminal defendant convicted of drug charges did not violate the separation of powers doctrine because they are "reasonably related to the costs of administering the criminal justice system and are not simply an executive branch tax"). See also Broyles v. State, 285 Ark. 457, 688 S.W.2d 290, 292 (1985) (holding that a charge on a criminal defendant convicted of driving while intoxicated to support the Highway Safety Program and other programs relating to drunken driving, detoxification services and alcohol and drug abuse rehabilitation is constitutional since funds go to agencies society has had to create to keep the highways safe from drunk drivers); State v. Young, 238 So.2d 589 (Fla.1970) (holding that a statute imposing a one dollar charge for law enforcement on every person convicted of a crime is not a violation of the separation of powers doctrine because it is reasonable that one who is convicted of a crime "should be made to share in the improvement of agencies that society has had to employ in defense against the very acts for which he has been convicted"); State v. Johnson, 478 S.E.2d 16, 24 (N.C.App.1996) (finding that a $100 fee imposed on a criminal convicted of a drug charge to recompense the state for costs of drug analysis was not a violation of the separation of powers doctrine because the charge is reasonably related to the costs of administering the criminal justice system).
For the same reasons that La. R.S. 13:1906 is unconstitutional in the civil context, it is also unconstitutional in the criminal context as a violation of the separation of powers doctrine. The additional fee imposed by the statute on all criminal defendants to benefit SNAP is not sufficiently related to the administration of the criminal justice system to warrant its collection in the manner prescribed by La. R.S. 13:1906. The charge is not related in any material way to the criminal justice system. It does not support any of the traditional institutions that constitute the criminal justice system. It is not a charge intended to defray the costs of the prosecution of the particular defendant against whom the fee is assessed. Neither does the fee bear a relationship to a social problem caused by a specific crime to which the fee is attached. Rather, the three dollar fee is charged against all persons against whom a fine or costs are assessed, regardless of the crime or the particular costs of the prosecution.
In sum, we find that La. R.S. 13:1906 does not violate La. Const. art. VII, § 14. Instead, we find that the statute's imposition of a filing fee in all civil suits violates the right of access to the courts (La. Const. art. I, § 22) and the separation of powers doctrine *1045 (La. Const. art. II, § 2). Moreover, we also find that the statute's imposition of a fee in each criminal proceeding in which a fine, court costs, or a forfeiture is ordered violates the separation of powers doctrine (La. Const. art. II, § 2).

DECREE
For the reasons assigned, the judgment of the court of appeal declaring La. R.S. 13:1906 unconstitutional and vacating the writ of mandamus issued by the trial court is affirmed.
KIMBALL, J., dissents in part and assigns reasons.
JOHNSON, J., dissents.
KIMBALL, Justice, concurring in part and dissenting in part.
I concur with the majority's conclusion that La. R.S. 13:1906 is unconstitutional in the civil context. However, because the additional fee imposed by La. R.S. 13:1906 on all criminal defendants is intricately related to the administration of the criminal justice system, I am compelled to dissent from the majority's contrary holding.
According to the majority, the charge imposed by La. R.S. 13:1906 is not related in any way to the criminal justice system. In my view, this statement represents a fundamental misunderstanding of the relationship between domestic violence and the criminal justice system. U.S. Department of Justice statistics reveal that from 1987-1992, intimates (spouse, ex-spouse, boyfriend, girlfriend) committed an annual average of 621,015 rapes, robberies, or assaults, representing more than 13% of all these violent victimizations. Bureau of Justice Statistics, U.S. Dep't of Justice, Leaflet No. NCJ-149259, Violence Between Intimates 1 (1994). According to the Federal Bureau of Investigation, of the 22,540 murders committed nationwide in 1992, 15% of these murders involved a victim described in police records as an intimate of the killer. Id. The 1984 report of the U.S. Attorney General's Task Force on Family Violence recommended that family violence be recognized and responded to as a criminal activity and that law enforcement officials, prosecutors, and judges develop a coordinated response to family violence. U.S. DEP'T OF JUSTICE, ATTORNEY GENERAL'S TASK FORCE ON DOMESTIC VIOLENCE, FINAL REPORT (1994).
Safety Net for Abused Persons, Inc. (SNAP) is a program designed to assist through education and counseling both the victims and the perpetrators of domestic violence. SNAP provides victims of domestic violence with assistance in obtaining access to civil and criminal courts. Through programs implemented by SNAP, victims of domestic violence learn how to utilize the court system in order to protect themselves and their children.
The above quoted statistics compiled by the U.S. Department of Justice and the Federal Bureau of Investigation show the criminal justice system is inundated with cases involving domestic violence. Thus, I fail to understand how the majority could conclude that the fee imposed by La. R.S. 13:1906 is not sufficiently related to the administration of the criminal justice system.
For these reasons, I respectfully dissent from the portion of the majority's opinion which holds that the fee imposed by La. R.S. 13:1906 in criminal cases violates La. Const. Art. II, § 2.
NOTES
[*] Lemmon, J. not on panel. Rule IV, Part 2, § 3.
[1] Safety Net for Abused Persons v. Segura, 94-1471 (La.App. 3d Cir. 6/26/96); 677 So.2d 152.
[2] Safety Net for Abused Persons v. Segura, 96-1978 (La.11/8/96); 683 So.2d 253.
[3] The defendants argue that the definition of "needy" in the context of La. Const. art. VII, § 14(B) should be restricted to include only the "indigent." The defendants cite no authority in support of this contention. This argument lacks merit.
[4] Compare Crocker with Villars v. Provo, 440 N.W.2d 160 (Minn.App.1989) and Browning v. Corbett, 153 Ariz. 74, 734 P.2d 1030 (App.1986), two court of appeal cases which found a rational relationship between fees on dissolution of marriage petitioners and domestic violence shelters. These courts reasoned that "[s]ince victims of domestic violence and child abuse frequently come from broken homes, it is rational to raise funds for programs to assist such victims by requiring parties to a marriage dissolution action to pay an additional fee at the time of filing." Browning, 734 P.2d at 1032.
[5] We note that the statute may violate the constitutional guarantees of equal protection and due process as well. However, neither the parties nor the court of appeal raised this issue. Thus, this issue is not properly before us and we do not address it.