Dear Judge Burgess:
This office is in receipt of your request for an opinion of the Attorney General in regard to evaluation of court costs. After having reviewed the Supreme Court decision in Safety Net forAbused Persons v. Segura, 692 So.2d 1038 (La. 1997) and prior to revising your cost schedules in criminal and civil cases, you ask that this office "review the pertinent statutes, detailing each item of costs and to which agency those costs are to be paid, how the Segura decision affects collections for the "Help our Wildlife Fund" and "Louisiana Traumatic Head and Spinal Cord Injury Trust Fund" in criminal matters, and the impact ofSegura on House Bill 408 (requiring the Clerks of Court of DeSoto and Sabine Parishes to assess fees in civil matters for support of various non-profit organizations providing shelters for battered women and their children), as well as the payments of $10.00 to the Commissioner of Insurance on settlements in all personal injury cases." You feel because the Segura
decision brings into question the constitutionality of all costs not controlled by the Judiciary, "all costs should be evaluated as well." Moreover, recognizing the complexity of court costs, you state in order to properly assess and distribute costs, the court will "need continued assistance in keeping abreast of these matters."
A request for "detailing of each item of costs and to which agency those costs are to be paid", and that "all costs should be evaluated as well" is not a matter than can appropriately be handled by an opinion from this office, but requires a comprehensive study by the judicial branch. From an inquiry with the Judicial Administrator's Office, it appears a study relative to court costs had been made approximately two years ago but has not been updated. Material compiled from that study is enclosed that sets forth various court costs, but, of course, precedes the decision in the Segura case. Moreover, only a court can determine the constitutionality of costs mandated by statute, and it would not be a matter for the office of the Judicial Administrator to resolve.
With regard to your specific request for an opinion of this office as to how the Segura decision affects collections for the "Help our Wildlife Fund", R.S. 56:70.1; "Louisiana Traumatic Head and Spinal Cord Injury Trust Fund", R.S. 46:2633; statutes under House Bill 408 requiring DeSoto and Sabine Parish Clerks of Court to assess fees in civil matters for support of various non-profit organization providing shelters for battered women and their children; and payments to the Commissioner of Insurance on settlements in all personal injury cases, R.S. 9:2800.7, such a determination is again appropriate for determination by the courts.
In the Segura decision the court first found it necessary to determine whether the "fee" was in reality a "tax" which was defined as a charge that has as its primary purpose the raising of revenue as opposed to the regulation of public order, and a charge that is unrelated to or materially exceeds the special benefits conferred upon those assessed. The court found while the charge was referred to as a filing "fee", it was "in reality a tax", noting that the money collected did not go to court services nor any other entity associated with the judicial system, but a private nonprofit corporation to be used at its discretion. The court further found the charge did not defray the expense of litigation or support the court system, but raised revenue to fund a particular social program. It was concluded that the statute in question imposed an unconstitutional filing fee in violation of the right of access to the courts and of the separation of powers doctrine because its purpose, while worthy and necessary, was to fund domestic abuse services unrelated to the administration of justice. After noting that the clerks of court should not be made tax collectors for the state, nor should the justice system be used as a toll booth to collect money for random programs created by the legislature, it was held court fees may be imposed only for purposes relating to the administration of justice as a requirement inherent in the constitutional right of access to courts and the constitutional separation of powers doctrine.
Applicable to the charge in question the court stated as follows:
 SNAP is not a part of the judicial branch, it serves no judicial or even quasi-judicial function, it is not a program administered by the judiciary, and is not a link in the chain of the judicial system.
Additionally, the court found for the same reasons the statute was unconstitutional in the civil context, it was also unconstitutional in the criminal context as a violation of separation of powers doctrine. The additional fee imposed by the statute on all criminal defendants was not related in any material way to the criminal justice system; it did not defray the costs of the prosecution of the particular defendant against whom the fee is assessed; nor did the fee bear a relationship to a social problem caused by a specific crime to which the fee is attached.
While it appears certain of the statutes you specifically question or not related in any material way to the criminal justice system nor defray the cost of prosecution, others seem justified as clearly connected with the court judicial process, whereas others present a closer question as to the relationship to the administration of justice. However, it is the policy of the Attorney General's office to refrain from opining whether an statute is constitutional inasmuch as the Attorney General is charged with defending the constitutionality of all legislative statutes. The appropriate vehicle by which the constitutionality of a statute should be determined is a declaratory judgment between interested parties with a case in controversy.
We regret that we cannot detail and evaluate all statutorily mandated court costs to the various state agencies in light of the Segura case, but hope an analysis of that case will be of assistance in making the determination as each cost may be encountered, or you may seek recourse in court.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 BY: BARBARA B. RUTLEDGE Assistant Attorney General
BBR
Date Received: Aug. 20, 1997
Date Released: