Dear Mr. LeBlanc:
You requested the opinion of this office concerning the funding of sewage line repairs on private property. You advised that rainwater is infiltrating the City of Gretna's (the "City") sewer system, causing sewage backups. You advise that these backups result in sewage overflows which present serious health and safety issues to the entire community. The City has updated and fixed the sewage system located on public property, however, sewage lines located on private property are in need of repair. You asked several questions concerning this situation:
 1. May the City pay for or fund sewage line repairs located on private property for the public purpose of stopping the infiltration of pollution and hazardous waste into the community?
Your request must be examined in light of La. Const. Art. VII, Sec. 14(A), which generally prohibits the loan, grant and/or donation of public funds or property to any person, association or corporation, public or private. The Supreme Court has interpreted Art. VII, Sec. 14 to be violated whenever the state or a political subdivision seeks to give up something of value when it is under no obligation to do so. City of Port Allen v.Louisiana Municipal Risk Agency, 439 So.2d 399 (La. 1983). This office has construed the "legal obligation" requirement referred to in the City of Port Allen decision to be a requirement that the use and power for a particular expenditure of public funds be "sanctioned" or "authorized by law" or in the "discharge of a legal duty". Op. Atty. Gen. 92-204. See also: Guste v. NichollsCollege Foundation, 564 So.2d 682 (La. 1990). The opinions of this office also refer to the requirement for "an underlying legal obligation or authority" for the transfer or expenditure of public funds. Op. Nos. 92-543, 92-494, 92-402, 92-204.
In accordance with the provisions of Art. VII, Sec. 14(A), it is the opinion of this office that the City may not assume the cost of the sewage line repairs located on private property, except as provided in answer to your question number 2. Since the Town is under no obligation to repair sewage lines owned by private persons located on private property, the provision of same would be tantamount to a donation. In accord: Ops. Atty. Gen. Nos. 97-99, 96-348, 90-498, 78-1562.
Please note that the City would not be prohibited from undertaking the repairs of the sewage lines on private property as long as the City charges each landowner a fee that is sufficient to defray the cost of the repairs. Ops. Atty. Gen. Nos. 97-99, 95-221.
 2. For a public purpose and to benefit the community as a whole, may the City pay for or fund sewage line repairs located on private property of the indigent?
An exception to the prohibition contained in Article VII, Section 14(A) is found in Section 14(B) which permits the donation of public funds and/or property for programs of social welfare for the aid and support of the needy. This provision has been construed to include the use of public property as well as funds for social welfare purposes. Ops. Atty. Gen. Nos. 98-238, 97-236, 87-587 and 84-161.
The term "needy" has typically been characterized by this office as low income, impoverished or indigent, but the Louisiana Supreme Court in a footnote to a recent case found no authority in support of this narrow definition. Safety Net for AbusedPersons v. Segura, 692 So.2d 1038, at 1040 fn. 3 (La. 1997). Therefore, it appears that "needy" now encompasses more than was allowed previously, although Black's Law Dictionary defines "needy" as "indigent, necessitous, very poor" and Webster's II, New Riverside University Dictionary defines "indigent" as "impoverished", and "necessitous" as "needy: poor." It appears that the definitions of "needy" remain essentially the same, and programs that aid the needy continue to be those for the poor, indigent, necessitous, and impoverished.
Further, we have recognized, as a threshold criterion, that a systematic program with objective eligibility requirements should be implemented to insure that the program serves only those individuals and/or families that are truly needy. Ops. Atty. Gen. Nos. 98-238, 97-236, 92-543 and 82-115.
It is the opinion of this office that the City could, in accordance with the constitution, fund sewage line repairs located on private property only if the public funds are utilized for those who can be classified as needy and if those who receive assistance are screened through objective criteria to ensure that they are truly needy.
 3. If the City is not authorized to pay for or fund sewage line repairs for a public purposes, may the City issue loans for such repairs?
As stated earlier, the Section 14(A) prohibits the loan, donation or pledge of public funds or property; therefore, the City could not issue loans for such repairs unless the loans were part of a program of social welfare for the aid and support of the needy in accordance with Section 14(B).
 4. If the City is not authorized to pay for or fund sewage line repairs, may the City issue loans to the indigent for such repairs?
Please see the response to question number 3.
 5. If the answer to question No. 4 is "yes", may the City issue these loans to the indigent in a "no interest" or "nominal interest rate" manner?
As it is constitutionally permissible for the City to donate funds to the indigent if the public funds are utilized for those who can be classified as truly needy in accordance with a systematic program with objective eligibility requirements, the City could issue loans to those persons at a nominal or zero interest rate.
Trusting that the foregoing adequately responds to your request, we remain
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ____________________________ MARTHA S. HESS Assistant Attorney General
Date Received: Date Released:
Martha S. Hess Assistant Attorney General