ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

December 28, 2005

The Honorable Mike Stafford
Harris County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002

Opinion No. GA-0387

Re: Whether Government Code section 51.961(g), which requires one-half of the family protection fee collected in divorce suits to be deposited in the child abuse and neglect prevention trust account, violates the open courts provision, Texas Constitution article I, section 13 (RQ-0362-GA)

Dear Mr. Stafford:

You inquire about the constitutionality of Government Code section 51.961(g), which requires one-half of a fee collected in a suit for dissolution of marriage to be paid to the comptroller for deposit to the credit of the child abuse and neglect prevention trust fund account (the "trust fund account").[1] You ask whether the disposition of one-half of the fee pursuant to section 51.961(g) violates the "open courts" provision of the Texas Constitution. See Request Letter, supra note 1, at 4; TEX. CONST. art. I, § 13.

Senate Bill 6, an enactment of the Seventy-ninth Legislature relating to protective services and family law matters, amended Government Code section 51.961 and became effective September 1, 2005. See Act of May 29, 2005, 79th Leg., R.S., ch. 268, §§ 1.66, 5.02, 2005 Tex. Gen. Laws 621, 654, 720. Prior to September 1, 2005, section 51.961(a) provided that "[t]he commissioners court of a county may adopt a family protection fee in an amount not to exceed $15." See Act of June 1, 2003, 78th Leg., R.S., ch. 198, § 2.165(a), 2003 Tex. Gen. Laws 661, 711 (adopting Government Code section 51.961). Also prior to September 1, 2005, section 51.961(d) required the clerk to collect the fee when a suit for dissolution of a marriage under Family Code chapter 6 was filed and pay the fee to the appropriate county officer "for deposit in the county treasury to the credit of the family protection account" to fund services directed at preventing family violence and child abuse. See id.; see also Tex. Att'y Gen. Op. No. GA-0231 (2004) at 3 (addressing constitutionality of Government Code section 51.961(d)-(e)).

---

[1]See Letter from Honorable Mike Stafford, Harris County Attorney, to Honorable Greg Abbott, Attorney General of Texas (July 8, 2005) (on file with Opinion Committee, also available at http://www.oag.state.tx.us) [hereinafter Request Letter].

Senate Bill 6 amended section 51.961 to "increase the fee from an amount not to exceed $15 to an amount not to exceed $30, with half of the fee going to the child abuse and neglect prevention fund account." FISCAL NOTE, Tex. S.B. 6, 79th Leg., R.S. (2005) at 8. Section 51.961 now provides in part:

> (a)  The commissioners court of a county shall adopt a family protection fee in an amount not to exceed $30.

> (b)  [T]he district clerk or county clerk shall collect the family protection fee at the time a suit for dissolution of a marriage under Chapter 6, Family Code, is filed.  . . . .

> (c)  [exceptions]

> (d)  The clerk shall pay one-half of the fee collected under this section to the appropriate officer of the county in which the suit is filed for deposit in the county treasury to the credit of the family protection account.  . . . .

>      . . . .

> (g)  The clerk shall pay one-half of the fee collected under this section to the comptroller, who shall deposit the money to the credit of the child abuse and neglect prevention trust fund account established under Section 40.105, Human Resources Code.

TEX. GOV'T CODE ANN. § 51.961(a)-(g) (Vernon Supp. 2005), *as amended by* Act of May 29, 2005, 79th Leg., R.S., ch. 268, § 1.66, 2005 Tex. Gen. Laws 621, 654 (effective September 1, 2005).

Section 51.961(g) directs one-half of the family protection fee to the child abuse and neglect prevention trust fund account established in the general revenue fund by Human Resources Code, subchapter D, section 40.105. *See* TEX. HUM. RES. CODE ANN. § 40.105 (Vernon Supp. 2005). Part of each fee collected for issuing a marriage license or declaration of informal marriage is also placed in this account. *See* TEX. LOC. GOV'T CODE ANN. § 118.022(a) (Vernon Supp. 2005) ($12.50 of each fee shall be placed in child abuse and neglect prevention trust fund account).

Chapter 40, subchapter D provides for child abuse and neglect primary prevention programs, which are services and activities available to the community or to families to prevent child abuse and neglect before it occurs. *See* TEX. HUM. RES. CODE ANN. § 40.101 (Vernon Supp. 2005). *See also id.* § 40.101(2) (defining "primary prevention"). Subchapter D also establishes a "child abuse and neglect prevention operating fund account" (the "operating fund") in the general revenue fund. *Id.*

§ 40.106(a).[2] Money placed in the trust fund account is transferred to the operating fund according to the following provision:

> The department [of Family and Protective Services ] may transfer money contained in the [child abuse and neglect prevention] trust fund to the operating fund at any time. However, during a fiscal year the department may not transfer more than the amount appropriated for the operating fund for that fiscal year. Money transferred to the operating fund that was originally deposited to the credit of the trust fund under Section 118.022, Local Government Code, may be used only for child abuse and neglect primary prevention programs.

*Id.* § 40.105(b). Section 40.106 authorizes the legislature to appropriate the money in the operating fund to carry out the provisions of chapter 40, subchapter D. *See id.* § 40.106(c). Administrative costs, subject to a limit established by section 40.104(a),[3] "shall be taken from the operating fund." *See id.* § 40.106(b).

Subchapter D requires the Department of Family and Protective Services ("the department") to operate a child abuse and neglect primary prevention program to

> (1) set policy, offer resources for community primary prevention programs, and provide information and education on prevention of child abuse and neglect;

> (2) develop a state plan for expending funds for child abuse and neglect primary prevention programs that includes an annual schedule of transfers of trust fund money to the operating fund;

> (3) develop eligibility criteria for applicants requesting funding for child abuse and neglect primary prevention programs; and

---

[2]This fund was formerly called the Children's Trust Fund and managed by the Children's Trust Fund of Texas Council. *See generally* Tex. Att'y Gen. LO-96-047, LO-95-004 (addressing legal questions about using Children's Trust Fund). In 2001 the legislature abolished the Children's Trust Fund of Texas Council and transferred its powers and duties to the Department of Protective and Regulatory Services. *See* Act of May 25, 2001, 77th Leg., R.S., ch. 957, § 1, 2001 Tex. Gen. Laws 1916, 1916-21 (adopting TEX. HUM. RES. CODE ANN. chapter 40, subchapter D). The enactment provided that "a reference in the law to the children's trust fund means the child abuse and neglect prevention trust fund account." *Id.* § 10(2). In 2005, the Department of Protective and Regulatory Services was renamed the Department of Family and Protective Services. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 268, §§ 1.74, 1.75, 2005 Tex. Gen. Laws 621, 661.

[3]Human Resources Code section 40.104(a) provides that "[a]dministrative costs under this subchapter during any fiscal year may not exceed an amount equal to 50 percent of the interest credited to the trust fund during the preceding fiscal year." TEX. HUM. RES. CODE ANN. § 40.104(a) (Vernon Supp. 2005).

> (4) establish funding priorities for child abuse and neglect primary prevention programs.

*Id.* § 40.102(a). *See id.* § 40.101(5) ("'Trust fund' means the child abuse and neglect prevention trust fund account."). Funding priorities are determined through community needs assessments. *See* 40 TEX. ADMIN. CODE § 704.803 (2005).

The child abuse and neglect prevention trust fund account is used to help fund the Services to At-Risk Youth Program managed by the department's Division of Prevention and Early Intervention.[4] The department describes the Services to At-Risk Youth (STAR) program as follows:

> STAR services are provided to youth under the age of 18 who are runaways, truants, and/or living in family conflict, youth who are age 9 and younger who have allegedly been involved in or committed delinquent offenses, and 10-to-16-year-olds who have allegedly committed misdemeanor or state jail felony offenses but have not been adjudicated delinquent by a court. . . . Services must include family crisis intervention counseling, short-term emergency residential care, individual and family counseling, and universal child abuse prevention activities.

State Plan, *supra* note 4.

The portion of the family protection fee placed in the child abuse and neglect prevention trust fund account pursuant to section 51.961(g) is ultimately used to fund the department's Division of Prevention and Early Intervention program for services to at-risk youth, including administrative costs. You ask whether this disposition of half of the filing fee collected under Government Code section 51.961(b) violates the "open courts" provision of article I, section 13 of the Texas Constitution. Request Letter, *supra* note 1, at 4. This provision is as follows:

> All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.

TEX. CONST. art. I, § 13.

This provision establishes the importance of the right of access to the courts. *See LeCroy v. Hanlon,* 713 S.W.2d 335, 339 (Tex. 1986). It "specifically guarantees all litigants the right to redress their grievances" in court. *Id.* at 341. "[T]he legislature cannot arbitrarily or unreasonably interfere with a litigant's right of access to the courts." *Id.* In *LeCroy,* the Texas Supreme Court considered the constitutionality of a provision directing to the general revenue fund $40 of the $75 filing fee that a litigant paid to bring a case in district court. *Id.* at 336. The purpose of the enactment was "'to

---

[4]*See* TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, *State of Texas Child and Family Services Plan for 2005-2009* (2004), Description of Services, Division of Prevention and Early Intervention, *available at* http://www.dfps.state.tx.us/About/State_Plan/2005-2009_Plan/04.asp [hereinafter "State Plan"].

generate revenue and to help finance state services.'" *Id.* at 341 (quoting HOUSE COMM. ON APPROPRIATIONS, BILL ANALYSIS, Tex. H.B. 1593, 69th Leg., R.S. (1985)). Thus, the court considered "whether a filing fee that goes to state general revenues is an arbitrary and unreasonable interference with the right of access to the court." *Id.* It stated that "[t]he major defect with the filing fee is that it is a general revenue tax on the right to litigate: the money goes to other statewide programs besides the judiciary." *Id. See Dallas County v. Sweitzer*, 881 S.W.2d 757, 770-71 (Tex. App.–Dallas 1994, writ denied) (finding unconstitutional sheriff's fee and court reporter's fee collected by court clerk and deposited in county general fund where funds could be spent on programs other than the judiciary). While "[c]harging litigants that are able to pay a reasonable fee for judicial support services does not violate the open courts provision," the court pointed out that nearly all states with similar open courts provisions had found unconstitutional filing fees that go to fund general welfare programs and not court-related services. *LeCroy*, 713 S.W.2d at 342.

The *LeCroy* court pointed out that *Crocker v. Finley*, 459 N.E.2d 1346 (Ill. 1984), was directly on point, and this case is particularly relevant to the question before us. The Texas Supreme Court summarized the Illinois case as follows:

> [I]n *Crocker v. Finley*, the Illinois Supreme Court considered the constitutionality of a $5 fee in divorce suits to finance a statewide domestic violence shelter program. The Illinois Supreme Court held that the $5 charge was a tax, and not a fee, because the charge had no relation to the judicial services rendered and was assessed to provide general revenue.

*LeCroy*, 713 S.W.2d at 341 (citations omitted). "The specific program was laudable, but the [Illinois] court held the act violated its open courts provision," stating that "'[i]f the right to obtain justice freely is to be a meaningful guarantee, it must preclude the legislature from raising general revenue through charges assessed to those who would utilize our courts.'" *Id.* at 342 (quoting *Crocker*, 459 N.E.2d at 1351).

In a 1997 opinion relying in part on *LeCroy*, the Louisiana Supreme Court invalidated a statute imposing a court filing fee in certain city courts to benefit Safety Net for Abused Persons, or "SNAP," a domestic violence program and shelter serving a Louisiana parish. *See Safety Net for Abused Persons v. Segura*, 692 So. 2d 1038 (La. 1997). The fee was to be deposited in a special fund to benefit SNAP, which provided "a myriad of laudable services for victims of domestic abuse, the primary ones being shelter, counseling and information for abuse victims." *Safety Net*, 692 So. 2d at 1043. "However, these services have no logical connection to the judicial system. SNAP is not a part of the judicial branch, it serves no judicial or even quasi-judicial function, it is not a program administered by the judiciary, and it is not a link in the chain of the justice system." *Id.* at 1043-44. Thus, collecting the fee from litigants violated the right of access to the courts. *See id.*

On the basis of *LeCroy* we conclude that the provisions of Government Code section 51.961 requiring filing fees to be collected and allocated to a state agency's programs violates the open courts provision of the Texas Constitution. No statute allocates the filing fees subject to section 51.961(g) for court-related purposes for support of the judiciary. The language of section 51.961(g) differs from other filing fee provisions that expressly allocate the fees to court-related purposes. *See*

TEX. GOV'T CODE ANN. § 311.011 (Vernon 2005) (words and phrases shall be construed according to the rules of common usage). For example, Government Code section 51.702(a) provides that "in addition to all other fees authorized or required by other law, the clerk of a statutory county court shall collect a $40 filing fee in each civil case filed in the court to be used for court-related purposes for the support of the judiciary." *Id.* § 51.702(a). The fees collected under this section are sent to the comptroller for deposit in "the judicial fund," *id.* § 51.702(d), a separate fund in the state treasury to "be used only for court-related purposes for the support of the judicial branch of this state." *Id.* § 21.006 (Vernon 2004). *See also* TEX. LOC. GOV'T CODE ANN. § 133.151(c)(1) (Vernon Supp. 2005) (certain civil fees in district court shall be allocated to "the judicial fund to be used for court-related purposes for the support of the judiciary").

Pursuant to section 40.102(a) of the Human Resources Code, the trust account is to be used to "offer resources for community primary prevention programs," such as the counseling, short term residential care, and other prevention activities provided by the Services to At-Risk Youth program. TEX. HUM. RES. CODE ANN. § 40.102(a) (Vernon Supp. 2005). Section 40.106(b) provides that administrative and other costs, subject to the limit established by section 40.104, "shall be taken from the operating fund" derived from the child abuse and neglect prevention trust account. *Id.* § 40.106(b). Thus, filing fees placed in the trust account may be spent for the department's administrative costs, an expenditure that is clearly not for court-related purposes. *See id.* These fees are also to be spent for state programs directed at preventing child abuse and neglect before it occurs, programs that have no apparent connection with the judiciary. The filing fees in question are not designated for court-related purposes.

We note that Attorney General Opinion GA-0231 (2004) addressed the constitutionality under Texas Constitution, article I, section 13 of the fee collected under section 51.961(d) "for deposit in the county treasury to the credit of the family protection account." TEX. GOV'T CODE ANN. § 51.961(d) (Vernon Supp. 2005); *see generally* Tex. Att'y Gen. Op. No. GA-0231 (2004). Section 51.961(d) authorizes the commissioners court to use the account to "provide funding to a nonprofit organization that provides services described by Subsection (e)." TEX. GOV'T CODE ANN. § 51.961(d) (Vernon Supp. 2005). When Attorney General Opinion GA-0231 was issued, the section 51.961(e) services consisted of "family violence prevention, intervention, mental health, counseling, legal, and marriage preservation services to families that are at risk of experiencing or that have experienced family violence or the abuse or neglect of a child."[5] Act of June 1, 2003, 78th Leg., R.S., ch. 198, § 2.165(a), 2003 Tex. Gen. Laws 611, 711 (adopting Government Code section 51.961(e)); *see also* Tex. Att'y Gen. Op. No. GA-0231 (2004) at 1. Attorney General Opinion GA-0231 concluded that collecting the fee did not violate the constitution, but that the "family protection fee revenues may be used for court-related purposes only," and that "[a] county commissioners court, which has sole authority to distribute the fee revenues, must determine whether a particular use is court related." *See* Tex. Att'y Gen. Op. No. GA-0231 (2004) at 4. Thus, Attorney General Opinion

---

[5]Government Code section 51.961(e), as amended in 2005, allows a service provider who receives funds under section 51.961(d) to "provide family violence *and child abuse* prevention, intervention, *family strengthening,* mental health, counseling, legal, and marriage preservation services to families that are at risk of experiencing or that have experienced family violence or the abuse or neglect of a child." TEX. GOV'T CODE ANN. § 51.961(e) (Vernon Supp. 2005), *as amended by* Act of May 29, 2005, 79th Leg., R.S., ch. 268, § 1.66, 2005 Tex. Gen. Laws 621, 654 (additions emphasized).

GA-0231 construed section 51.961 consistently with the constitution. *See Proctor v. Andrews,* 972 S.W.2d 729, 735 (Tex. 1998) ("Statutes are given a construction consistent with constitutional requirements, when possible, because the legislature is presumed to have intended compliance with [the constitution.]"), *Brady v. Fourteenth Court of Appeals,* 795 S.W.2d 712, 715 (Tex.1990); *see also* TEX. GOV'T CODE Ann. § 311.021(1) (Vernon 2005).

We are not able to give a constitutional construction to the provisions governing the one-half of the fee collected under section 51.961 and eventually distributed to the Department of Family and Protective Services. Attorney General Opinion GA-0231 dealt with a single entity vested with the authority necessary to insure that its fee revenues were allocated to constitutionally authorized purposes. The commissioners court imposes the fee and is responsible for spending it to fund services directed at preventing family violence and child abuse. *See generally Weber v. Sachse,* 591 S.W.2d 563 (Tex. Civ. App.–Dallas 1979, writ dism'd); TEX. LOC. GOV'T CODE ANN. §§ 111.010, 111.041 (Vernon 1999) § 111.070 (Vernon Supp. 2005) (commissioners court's authority over budget). The commissioners court moreover routinely budgets funds to support the judiciary. *See* TEX. GOV'T CODE ANN. § 26.008 (Vernon 2004) (excess court costs returned by comptroller to county must be used only for court-related purposes), TEX. LOC. GOV'T CODE ANN. § 291.001(3) (Vernon 2005) (commissioners court shall maintain the courthouse). At the county level, control over the funds at issue is vested in a single entity with broad authority over county expenditures, including authority to budget funds for the judiciary.

In contrast, authority over the filing fee revenues intended for the department is not concentrated in one governmental entity. The county collects the fee and transfers half of it to the comptroller for placement in the trust account fund in the general revenue fund. This account also includes the revenues from issuing marriage licenses and declarations of informal marriage, funds that are not subject to article I, section 13, and no provision of law separates the filing fee revenues from other revenues in the trust account fund. *See* TEX. LOC. GOV'T CODE ANN. § 118.022 (Vernon Supp. 2005) ($12.50 of each fee for issuing a marriage license and a declaration of informal marriage shall be placed in child abuse and neglect prevention trust fund account). The department's authority over the trust account fund is limited by legislative appropriation and by the legislation governing its expenditure. *See* TEX. HUM RES. CODE ANN. §§ 40.102, 40.105(b), 40.106(b) (Vernon Supp. 2005). No one entity has broad authority over the expenditure of the filing fees in question. Under these circumstances, legislation rather than reliance on rules of statutory construction is necessary to ensure that these fees are used only for court-related purposes.

Moreover, money from the trust fund account is appropriated to the department to be used only for "child abuse and neglect *primary* prevention programs," including administrative expenses. *See id.* § 40.105 (emphasis added); *see also id.* §§ 40.102, 40.106(b). The provisions governing use of the trust fund account were adopted in 2001, at a time when no filing fees were placed in the fund. *See* Act of May 25, 2001, 77th Leg., R.S., ch. 957, § 1, 2001 Tex. Gen. Laws 1916, 1916-18 (adopting sections 40.101-.107 of the Human Resources Code). The legislature had no reason at that time to allocate the trust fund account for court-related purposes. In contrast, provisions authorizing the county family protection fee and providing for its expenditure were part of the same enactment. *See* Act of June 1, 2003, 78th Leg., R.S., ch. 198, § 2.165(a), 2003 Tex. Gen. Laws 611, 711 (adopting Government Code section 51.961).

The county family protection fee at issue in Attorney General Opinion GA-0231 may be used for services "to families that are at risk of experiencing *or that have experienced family violence or the abuse or neglect of a child.*"  TEX. GOV'T CODE ANN. § 51.961(e) (Vernon Supp. 2005) (emphasis added).  This language authorizes the county to use the filing fees to fund a broad range of services, including court-related services.  The department's authority to spend its share of the filing fees is much narrower, encompassing only primary prevention programs, which may not even include court-related services.  Accordingly, we conclude that section 51.961(g) imposes an unconstitutional burden on a litigant's right of access to the courts in violation of article I, section 13.

## S U M M A R Y

Government Code section 51.961(g), as amended by the Seventy-ninth Legislature, requires one-half of a fee collected in a suit for dissolution of marriage to be deposited to the credit of the child abuse and neglect prevention trust fund account, which is used to fund child abuse and neglect prevention programs carried out by the Department of Family and Protective Services. Pursuant to the open courts provision of the Texas Constitution, article I, section 13, filing fees may only be used for judicial support services. Section 51.961(g) allocates filing fees to purposes other than judicial support services and therefore imposes an unconstitutional burden on a litigant's right of access to the courts in violation of article I, section 13.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

NANCY S. FULLER
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee