## In re LEE.

No. 9182—Opinion Filed Oct. 2, 1917.

(168 Pac. 53.)

(Syllabus by the Court.)

1. **Constitutional Law—Denial of Justice—Docket Fees—Statute—"Sale or Denial of Justice and Right."**

Section 5, ch. 87, Session Laws 1915, imposing a docket fee of $25 in each cause filed in the Supreme Court, to be collected and re-coverable as other costs, and providing for an advance payment to the clerk of $40, is not a sale or denial of justice and right within the meaning of section 6, art. 2, of the Constitution (Williams', sec. 14).

2. **Statutes — Subject and Title — Constitutional Provisions.**

Chapter 87, Session Laws 1915, does not embrace more than one subject within the meaning of section 57, art. 5, of the Constitution (Williams', sec 147).

3. **Statutes — Amendment — Constitutional Provisions.**

Section 5, ch. 87, Session Laws 1915, is not in conflict with that portion of section 57, art. 5, of the Constitution (Williams', sec. 147), which declares that: "No law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length."

4. **Statutes — House of Representatives — Revenue Bill—Constitutional Provisions —"Bill for Raising Revenue."**

Chapter 87, Session Laws 1915, is not a bill for raising revenue, which, under section 33, art. 5, of the Constitution (Williams', sec. 95), must originate in the House of Representatives.

Sharp, C. J., and Brett, J., dissenting.

Original application by John W. Lee for a writ of mandamus to William M. Franklin, as Clerk of the Supreme Court of the State of Oklahoma. Denied.

E. G. McAdams and Norman R. Haskell, for petitioner.

S. P. Freeling, Atty. Gen., and John B. Harrison, Asst. Atty. Gen., for respondent.

MILEY, J. The only question necessary to the determination of this case is whether that portion of section 5, ch. 87, Session Laws 1915, p. 135, providing that a docket fee of $25 shall be taxed, collected, and recoverable as other costs in each case filed in the Supreme Court, and requiring an advance payment to the clerk of $40, is invalid.

By chapter 97, Session Laws 1913, p. 161, salaries were prescribed to be paid by the state to the clerk of the Supreme Court and the Criminal Court of Appeals and his assistants. The act also prescribed a schedule of fees to be charged and collected by the clerk for the use and benefit of the state for services rendered to litigants in causes instituted in these courts, among other fees so prescribed being:

"For filing, indexing and docketing each cause, $3.00."

It was also therein enacted (section 7) that:

"No cause shall be docketed nor process issued thereon (except where proper affidavit as is now provided by law, or in criminal causes in [which?] the state of Oklahoma is appellant) until the plaintiff in error or appellant shall pay the clerk $15.00 advance fees; and when said sum shall have been exhausted by proper charges in said cause, the clerk shall require the plaintiff in error or appellant to make further deposit of a sufficient sum to cover all additional costs that may accrue in said cause."

This payment of $15 was evidently intended as a deposit for payment of fees, for which the plaintiff in error or appellant should become liable, any unearned portion thereof remaining at the termination of the cause to be refunded to the depositor, the affidavit referred to being that of inability to make the deposit by reason of poverty, in which case none is required.

By chapter 87, Session Laws 1915, p. 135, entitled:

"An act authorizing the Governor to appoint, with the approval of the Supreme Court, nine Supreme Court Commissioners to assist the Supreme Court; to designate not more than nine district judges to act as Supreme Court Commissioners; fixing the term of office and compensation; prescribing the duties of and providing office rooms and clerical assistance for such Commissioners; providing for a docket fee in all cases filed in the Supreme Court; and declaring an emergency"

—it is provided in section 5 as follows:

"In each cause hereafter filed in the Supreme Court there shall be taxed in lieu of the fee now provided for filing, indexing and docketing each cause, a docket fee of $25.00, which shall be collected and recoverable as other costs. The advance payment to the clerk shall be $40.00 instead of $15.00 as now provided."

Construing the foregoing sections together, it appears that upon a cause being filed in this court the party filing same becomes liable to pay to the state a fee of $25, the same to be deducted by the clerk from the deposit, if any, of $40 made at the commencement of the proceeding, and paid by him into the state treasury at the time of making his next monthly report (section 4, ch. 97, Session Laws 1915, as amended by section 7, ch. 238, Session Laws 1915, p. 563); this fee being collected and paid into the state treasury just as are other fees prescribed by law; for example, fees for issuing summons in error, filing briefs, and the like. While these fees are paid in the first instance by the plaintiff in error, provision is made by section 5261, Rev. Laws 1910, by which he, in the event the judgment is reversed, shall recover of the other party his costs, which, of course, include such fees paid by him to the clerk for the use and benefit of the state. No complaint is made of any of the fees prescribed by law to be paid to the state in causes pending in this court, except that of the docket fee of $25.

It is first argued that to exact this fee is to sell right and justice, contrary to section 6, art. 2, of the Constitution (Williams', sec. 14), which declares:

"The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong, and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice."

The section of the Bill of Rights is not entirely peculiar to our state Constitution. With the exception of the addition of certain elements not material here, a declaration of similar import forms a part of the present constitutions of the great majority of the states of the Union, and was contained in the earliest constitutions of many of the older states. But it is more ancient than any of these. It originated with Magna Charta, forming part of that which has been said to be by far the most important article thereof. The declaration there read, according to one of the generally accepted English renditions:

"We will sell to no man, we will not deny or defer to any man, either justice or right."

Sir Edward Coke (Coke's Institutes, part 2, p. 55) explains this pledge thus:

"This is spoken in the person of the King, who in judgment of law, in all his courts of justice is present, and repeating these words, 'Nulli vendemus,' etc. And therefore every subject of this realm, for injury done to him in bonis, terris, vel persona (goods, lands, or person) by any other subject * * * may take his remedy by the course of the law, and have justice and right for the injury done to him, freely without sale, fully without any denial, and speedily without delay."

While the idea originated with Magna Charta, it seems that Coke's explanation is the source of much of the phraseology in which the guaranty is expressed in many of the present-day state Constitutions. In determining what is meant by administering right and justice without sale or denial, we should seek the aid of the history of the provision. English jurists and commentators are not entirely agreed either as to the evils complained of by the barons, or the extent of the reform promised by this article of Magna Charta. Some writers have probably exaggerated both, and it is perhaps now impossible to state either with precision. In his History of the Exchequer Madox says:

"Some men used to pay fines to have or obtain justice or right; others, to have their

right or their proceedings or judgment speeded; others, for stopping or delaying of proceedings at law; and others were obliged to pay great and excessive fines (viz. a fourth part, a third part, or a half of the debt sued for) to obtain justice and right, according to their several cases, so that the king seemed to sell justice and right to some and to delay or deny it to others. Against these mischiefs a remedy was provided by a clause in the great charters of liberties, made by King John and King Henry III. That clause in each of those charters runs in the same or consonant words, which are these: 'Nulli vendemus, nulli negabimus, aut differemus rectum aut justiciam.' "

The extent of the remedy thus afforded seems to us to have been well stated by the Supreme Court of Rhode Island as follows:

"The better opinion is that it was designed to abolish, not fixed fees, prescribed for the purposes of revenue, but the fines which were anciently paid to expedite or delay law proceedings and procure favor." Perce v. Hallett, 13 R. I. 364.

See, also, Harrison v. Willis, 7 Heisk. (Tenn.) 35. 19 Am. Rep. 604; Swann v. Kidd, 79 Ala. 431; Northern Counties Inv. Co. v. Sears, 30 Or. 388, 41 Pac. 931, 35 L. R. A. 188; Christianson v. Pioneer Furn. Co., 101 Wis. 343, 77 N. W. 174, 917; Harrigan v. Gilchrist, 121 Wis. 127, 99 N. W. 909; Henderson v. Stout, 137 Ind. 552, 36 N. E. 257, 24 L. R. A. 469.

In one of the earliest decisions of the courts of this country, construing a similar provision to include the means of obtaining justice as well as the end, and that the means includes original and judicial process, it was said that "original process must issue without price, except that which the law fixes," and also that "the judges where the causes depend must issue the proper judicial process, without fee or reward, except that fixed by law." Townsend v. Townsend, Peck (7 Tenn.) 15, 14 Am. Dec. 722. Other courts have held that this guaranty is not violated by a uniform tax on litigation (Harrison v. Willis, 7 Heisk. (Tenn.) 35, 19 Am. Rep. 604; Swann v. Kidd, 79 Ala. 431; Hewlett v. Nutt, 79 N. C. 263); nor by the exaction of entry and continuance fees in all causes filed, to be paid before entering the same, and for each term thereafter on or before the second day thereof upon penalty of dismissal (Perce v. Hallett, supra); nor by a statute that a plaintiff upon reversal of a judgment in his favor, as a condition precedent to his right to proceed further, must pay the taxable costs on such reversal (Christianson v. Pioneer Furn. Co., supra); nor by a statute requiring payment to a clerk of court, by plaintiff, on instituting a suit, a fee of $5, and at trial of $2, to be paid by the clerk over to the county treasurer (Northern Counties Inv. Co. v. Sears, supra); nor by statutes imposing a jury fee to be paid for the use of the county by a party demanding jury trial as a condition thereto (Adams v. Corriston, 7 Minn. 456 [Gil. 365]; Lommen v. Minn. Gas Light Co., 65 Minn. 196, 68 N. W. 53, 33 L. R. A. 437, 60 Am. St. Rep. 450); nor by requiring of plaintiff security for costs as a condition to maintaining the action (Harrigan v. Gilchrist, supra; Merrill v. Bowler, 20 R. I. 226, 38 Atl. 114).

In Henderson v. Stout, supra, the court said of such provision:

"Indeed, it may well be doubted as to whether a case has ever arisen in this country to which the clause of the Constitution under immediate consideration was applicable."

The case of Hayes v. C. C. & H. Min. & Mill Co., 227 Mo. 288, 126 S. W. 1051, cited by counsel for petitioner, can hardly be regarded as an authority on the question involved. That case was heard before Division No. 1 of the Supreme Court of Missouri. A statute exacting a docket fee of $3, to be collected at the time of filing each case from the party instituting same, and to be taxed as other costs, was assailed upon this and other constitutional grounds. Four judges participated in the decision. In an opinion written by one of them it was said that the statute was violative of a section of their Constitution practically identical with that here under consideration. However, only one of the judges concurred in that part of the opinion, the other two dissenting. The statute was held invalid by a majority of the judges, not upon this, but other grounds stated in the opinion.

In some decisions a meaning of this guaranty is given which extends beyond the boundaries ascribed to it by some of the authorities cited. But we are satisfied that it was never intended to guarantee the right to litigate entirely without expense to the litigants, nor to impose upon the public the entire burden of the expense of the maintenance of the courts. In Malin v. Lamoure County, 27 N. D. 140, 145 N. W. 582, 50 L. R. A. (N. S.) 997, Ann. Cas. 1916C, 207, wherein a broader interpretation of the meaning of this guaranty is made than by other courts, it was said:

"The right to require reasonable court fees, indeed, has been so generally conceded that a discussion of the proposition hardly seems to be necessary. The imposition of such fees is not a denial or sale of justice, provided that they are uniform, are reasonable, and have a reasonable relation to the services rendered."

By fees is not meant solely those fees paid to and retained by some officer of the court for a particular service rendered by such officer to the litigant.

"It is competent for the Legislature to provide for compensating all public officers by salaries. If it should see proper to do so, we know of no provision of the Constitution that would forbid exacting from persons requiring, and who are especially benefited by, the performance of official services, a reasonable compensation therefor, to be paid into the public treasury to reimburse the public for the expense incurred in providing and maintaining such offices. It is not essential to such exactions that they should inure to the personal benefit of the officer. The officers are but the agents of the state for transacting the public business; and it is, in its nature, a matter wholly immaterial to those requiring their services, whether the amount to be paid therefor goes to the officer, or into the public treasury, provided no more is exacted than is just and reasonable for the facilities afforded, and the services performed." State v. Judges, 21 Ohio St. 12.

See, also, Henderson v. Stout, supra.

The petitioner contends that the docket fee of $25 is unreasonable considered in relation to the particular service rendered therefor. If, as he contends, the only service was the "placing of a rubber stamp upon a case-made, and the writing upon the index and docketing records and filing of such case," by the clerk, there might be merit in his contention. But we do not so construe the purpose of the charge. There are other officers of the court than the clerk, who render some service in every cause filed. The only compensation of these officers, as well as the clerk, is by salary paid out of the general revenues. We think the purpose of the fee is to reimburse the state for the expenses incurred in providing and maintaining all of the officers and other facilities of the court, and is intended as compensation to the state for services rendered, not by the clerk only, but by the entire court. At the oral argument it was agreed that the message of the Governor to the Legislature (Senate Journal, Reg. Session, 5th Legislature of Oklahoma, p. 138) recommending the enactment of the statute prescribing the docket fee should be considered. In their brief counsel for petitioners say that, "what the Legislature really intended in the enactment of this law and for what purpose it was enacted" is indicated in this message. Therein, under the head of "Revenues to Be Derived from Departments," the Governor said:

"Every state agency with a few exceptions should be made at least partially self-sustaining. The courts which are a necessary agency for the peaceable settlement of civil controversies, and essential for good government, should not be supported entirely by the taxpayers. The litigants in civil cases should at least bear a part of these burdens. There is no reason why the peaceable man who settles his matters without legal controversies should be taxed to furnish this legal luxury entirely to the litigious citizen. The record shows that it costs the state on an average of about $50 for every civil case appealed to the Supreme Court. I accordingly recommend that a docket fee be taxed in the sum of $25 as a part of the costs in every such case to follow the result of the case, provision being made by the statute for the plaintiff in error securing this cost or depositing same and to recover judgment therefor if prevailing in the appeal."

This tends to confirm what we would have otherwise concluded to be the purpose of imposing this fee. It is true that the fees collected by the clerk are much more than sufficient to reimburse the state for the entire expense of maintaining the clerk's office, but are less than the amount appropriated to pay the salaries of the justices, commissioners, marshal, and other expenses of maintaining the court. The fee does not appear to us to be unreasonable in amount. We do not consider it an objection that the fee is exacted in advance of the rendition of the entire service to the party. Prior to the passage of the act of 1913 before referred to the clerk received no salary from the state, but his entire compensation consisted of reasonable fees collected from parties for services rendered, and retained by him. In Bohart v. Anderson, 24 Okla. 82, 103 Pac. 742, 20 Ann. Cas. 142, it was held, for reasons therein stated, that in the absence of a statute authorizing it, the clerk might require payment of his fees in advance of rendering the service, and decline to render the service until the fee was tendered. The fee here involved, although being one to the public, it seems to us, may for the same reason be made payable in advance, instead of at the termination of the litigation. We do not perceive that the exaction of this fee constitutes a sale or denial of right and justice under any accepted interpretation of the meaning of that phrase. Nothing has been suggested which indicates that the provision in our Constitution should be interpreted differently from similar provisions in other constitutions.

It is next insisted that the act (chapter 87, Session Laws 1915, p. 113) embraces two subjects, and is therefore invalid under article 5, sec. 57, of the Constitution (Williams', sec. 147). We do not think the provision relative to fees and costs in causes filed in the Supreme Court and the provisions relative to the creation of a temporary

commission to assist the court in disposing of the causes accumulated and being filed in said court are so distinct, unconnected, or incongruous as to relate to more than one subject within the meaning of the Constitution. Insurance Co., etc., v. Welch, 49 Okla. 620, 154 Pac. 48; Noble State Bank v. Haskell, 22 Okla. 48, 97 Pac. 590; State ex rel. Caldwell v. Hooker, 22 Okla. 712, 98 Pac. 964; City of Pond Creek v. Haskell, 21 Okla. 711, 97 Pac. 338; Ex parte Ambler, 11 Okla. Cr. 449, 148 Pac. 1061.

It is also urged that the section imposing the fee and providing for an advance payment to the clerk of $40 is repugnant to that part of section 57, art. 5, of the Constitution (Williams', sec. 147) which reads:

"No law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length."

The section in question does, by implication at least, amend section 7 and 8 of chapter 97, Session Laws 1913, without re-enacting and publishing them at length, or even referring to the title of the act.

Constitutional prohibitions of the character here involved have often been discussed by the courts, and it appears:

That they "have never, in construction, been given a rigid effect, but have been held applicable only to such statutes as come within their terms, when construed according to the spirit of such restriction, and in the light of the evils to be suppressed." 36 Cyc. 1061.

In People v. Mahaney, 13 Mich. 481, regarded as the leading case, the opinion by Judge Cooley on this point says:

"This constitutional provision must receive a reasonable construction, with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to, but not re-published, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the Constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent."

The section in question is in form original and appears to be intelligible and complete in itself without reference to the then existing statutes amended thereby. Eliminating all reference to the existing state of the law, the section would read as if written:

"In each cause hereafter filed in the Supreme Court, there shall be taxed a docket fee of twenty-five dollars, which shall be collected and recoverable as other costs. The advance payment to the clerk shall be forty dollars."

The reference to "other costs" for the procedure to be followed in collecting and recovering the fee is not objectionable. Pond Creek v. Haskell, supra. We hardly think that the section is misleading, or that it is necessary for one of ordinary intelligence to refer to any other act or statute to ascertain the legislative intent to exact a docket fee of $25, and require an advance payment to the clerk of $40 in each case filed in the Supreme Court. While the purpose could have been as well effected by an act strictly amendatory in form, re-enacting all of sections 7 and 8, with the desired changes, yet if the Legislature chose to employ an original act to accomplish the desired end, the court cannot interfere with their discretion in the matter. State v. Rogers, 107 Ala. 455, 19 South. 909, 32 L. R. A. 520.

While this question is not free from difficulty, and while we do not desire to encourage other legislation in this form, yet, in view of the fact that the legislative intent can be gathered from the act itself, and it does not tend to mislead or deceive, we cannot say that the mischief which the Constitution prohibits has been worked in this instance.

While we do not doubt our power, nor are we unmindful of our duty to refuse the enforcement of statutes enacted in a manner contrary to the Constitution, yet that power exists and duty arises only when, in our judgment, the invalidity of the act is placed beyond a reasonable doubt. Pond Creek v. Haskell, supra. With us to doubt the constitutionality of a statute is to uphold it.

It is finally claimed that the act of 1915, having originated in the Senate, is invalid because it is a revenue measure, while the Constitution provides in section 33, art. 5 (Williams', sec. 95): "All bills for raising revenue shall originate in the House of Representatives." From what has been said in the discussion of the first objection to the statute, it prescribes a fee to the public for services rendered by their officers, and is not exacted for revenue, but as compensation. An act prescribing such fees is not a reve-

nue measure within the meaning of the Constitution. Chapter 248, Sess. Laws 1913, p. 684, imposing a registration tax on mortgages, was held in Cornelius v. State, 40 Okla. 733, 140 Pac. 1187, not to be a revenue measure within the meaning of this section of the Constitution, and was reaffirmed in Trustees, etc., v. Hooton, 53 Okla. 530, 157 Pac. 293, L. R. A. 1916E, 602.

No other objection has been made to the validity of the act. It follows that the respondent has proceeded in accordance with law, and the writ is denied. All the Justices concur, except SHARP, C. J., and BRETT, J., who dissent.

SHARP, C. J. (dissenting). When the Bill of Rights (art. 2, sec. 1, Const.) ordained that the courts of justice of the state should be open to every person and right and justice administered without sale, denial, delay, or prejudice, it was intended, inter alia, to break up the somewhat common practice that formerly prevailed of requiring litigants to make cash deposits in order to gain admission into the courts for the purpose of vindicating their rights. This clearly expressed immunity, vouchsafed by constitutional guaranty, the opinion of the court strikes down. It holds, in effect, that, regardless of whether the amount involved be large or small, no matter how glaring the error committed by the trial court, board, or commission, and irrespective of the injustice and denial of right that may follow, the portals of this court will open only when the clerk thereof has been paid $40, $25 of which is disingenuously and incorrectly designated as a docket fee.

A statute which, in effect, provides that the jurisdiction of this court may be invoked only when tribute is paid the state, as distinguished from the payment of reasonable court fees, and which tribute or tax is used for current state purposes without regard to the service rendered or to be rendered, is violative of both the letter and spirit of an enlightened Constitution aimed, partly at least, against such practices. If it is within the power of the Legislature to impose a tax upon litigants, by requiring the prepayment of a charge of $25 in the guise of a docket fee, it would seem that the Legislature would be at liberty to multiply at will the amount of the so-called docket fee or tax, and thus to permit an evil which the Constitution aimed to forestall.

Aside from the validity of the act, its effect is to deny, or, at least, to impose an unjust burden upon litigants of limited financial means, the right to have their cases brought before this court for review.

Entertaining these views, I am unable to concur in the opinion of the court. I am authorized to say that Mr. Justice BRETT concurs in this dissent.