236 P.3d 61 (2010)
2010 OK 2
Jerry R. FENT, as taxpayer and citizen paying court costs in District Courts and all other similar parties/persons, Petitioner,
v.
STATE of Oklahoma, ex rel., DEPARTMENT OF HUMAN SERVICES; and Howard H. Hendrick, in his official capacity as the Director of the Department of Human Services; and Gerri Webb, Aneta Wilkinson, Jay Dee Chase, Bob Rawlings, Richard DeVaughn, Patrice Douglas, Ron Mercer, George Young, and Mike Peck in their official capacity as Commissioners of the Department of Human Services; and State of Oklahoma, ex rel. Office of the Attorney General and W.A. Drew Edmondson, Attorney General, in his official capacity as a State Administrator, and State of Oklahoma, ex rel. Office of Oklahoma County District Court Clerk, and Patricia Presley in her official capacity as Oklahoma County District Court Clerk, and all other 76 District Court Clerks of the State of Oklahoma, Respondents.
No. 107,116.
Supreme Court of Oklahoma.
January 19, 2010.
Rehearing Denied April 20, 2010 and June 1, 2010.
*63 Jerry R. Fent, Oklahoma City, OK, Pro-Se Petitioner.
Scott D. Boughton, Assistant Attorney General, Oklahoma Attorney General's Office, Oklahoma City, OK, and John M. Jacobsen, Assistant District Attorney, Oklahoma City, OK, for the Respondents.
HARGRAVE, J.
¶ 1 The petitioner, Jerry R. Fent, filed an application asking this Court to assume original jurisdiction and declare unconstitutional 28 O.S. Supp.2008 § 152(D)(E) and (F) and 28 O.S. Supp.2008 § 152.1(B), which require a portion of fees paid to the court clerks in civil actions to be credited to or deposited to non-judicial programs. Mr. Fent bases his standing to obtain relief upon his status as a resident taxpayer of the State of Oklahoma challenging the unlawful spending of public funds as well as upon his status as a plaintiff and attorney paying court costs in the district court of Oklahoma County.[1] The respondents do not dispute the petitioner's standing to sue. After oral argument before the Court en banc, we granted Mr. Fent's application to assume original jurisdiction.[2]
*64 ¶ 2 The complained-of fees are set forth at 28 O.S. Supp.2008 § 152 and 28 O.S. Supp.2008 § 152.1. Mr. Fent challenges 1) that portion of the filing fee in adoption cases deposited to the credit of the Voluntary Registry and Confidential Intermediary program and the Mutual Consent Voluntary Registry pursuant to 28 O.S. § 152(D); 2) that portion of the filing fee in civil cases deposited to the credit of the Child Abuse Multidisciplinary Account pursuant to 28 O.S. § 152(E) and § 152.1(B); and 3) the sum of $3.00 assessed and credited to the Office of the Attorney General Victim Services Unit pursuant to 28 O.S. § 152(F).
¶ 3 Title 28 O.S. Supp.2008 § 152 provides, in pertinent part:
A. In any civil case filed in a district court, the court clerk shall collect, at the time of filing, the following flat fees, none of which shall ever be refundable, and which shall be the only charge for court costs, except as is otherwise specifically provided for by law:

 1. Actions for divorce, alimony without
 divorce, separate maintenance,
 custody or support $140.00
 2. Any ancillary proceeding to modify
 or vacate a divorce decree
 providing for custody or support $ 40.00
 3. Probate and guardianship $132.00
 4. Annual guardianship report $ 30.00
 5. Any proceeding for sale or lease
 of real or personal property or
 mineral interest in probate or
 guardianship $ 40.00
 6. Any proceeding to revoke the
 probate of a will $ 40.00
 7. Judicial determination of death $ 55.00
 8. Adoption $102.00
 9. Civil actions for an amount of
 Ten Thousand Dollars ($10,000.00)
 or less and condemnation $147.00
 10. Civil actions for an amount of
 Ten Thousand One Dollars ($10,001.00)
 or more $160.00
 11. Garnishment $ 20.00
 12. Continuing wage garnishment $ 60.00
 13. Any other proceeding after judgment $ 30.00
 14. All others, including but not limited
 to actions for forcible entry
 and detainer, judgments from all
 other courts, including the Workers'
 Compensation Court $ 82.00
 15. Notice of renewal of judgment $ 20.00
 * * *

D. Of the amounts collected pursuant to paragraph 8 of subsection A of this section, the sum of Twenty Dollars ($20.00) shall be deposited to the credit of the Voluntary Registry and Confidential Intermediary program and the Mutual Consent Voluntary Registry established pursuant to the Oklahoma Adoption Code.
E. Of the amounts collected pursuant to subsection A of this section, the sum of Ten Dollars ($10.00) shall be deposited to the credit of the Child Abuse Multidisciplinary Account.
F. In addition to the amounts collected pursuant to subsections A and B of this section, the sum of Three Dollars ($3.00) shall be assessed and credited to the Office of the Attorney General Victim Services Unit.

* * *
¶ 4 Title 28 O.S. § 152.1 provides, in pertinent part:
A. In civil cases, the court clerk shall collect and deposit in the court fund the following charges in addition to the flat fee:

 1. For posting notices and filing certificates
 required by statute $ 30.00
 2. For the filing of any counterclaim
 or setoff pursuant to Section 1758
 of Title 12 of the Oklahoma Statutes $ 20.00
 * * *
 7. When a jury is requested $349.00
 * * *

B. Of the amounts collected pursuant to the provisions of paragraphs 1, 2 and 7 of subsection A of this section, the sum of Ten Dollars ($10.00) shall be deposited to the credit of the Child Abuse Multidisciplinary Account.

* * *
*65 ¶ 5 Mr. Fent contends that the collection of money by the court clerks for the use of the Department of Human Services and the Attorney General is an illegal tax on litigants and is a violation of the open access to the courts and due process of law provisions of the Oklahoma Constitution. Mr. Fent asserts that the facts are not in dispute and that this Court may decide a pure question of law. He asserts that court filing fees are taxes when they are transferred to a non-court state agency for "their general operations." He argues that court fees/taxes collected and used for non-court entities is a violation of the Oklahoma Constitution's "open access to the courts" mandated by Okla. Const., art. 2 § 6. Art. 2 § 6 provides:
"The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice."
¶ 6 Not long after statehood, this Court ruled that the imposition of court fees is not a denial of or sale of justice within the meaning of Article 2 § 6 provided such fees are uniform, reasonable and related to the services provided. In In re Lee, 1917 OK 458, 168 P. 53, it was asserted that a $25 docket fee imposed as costs in each case filed in the Supreme Court was a "sale of justice" prohibited by Art. 2 § 6. This Court explained that the provision was designed to abolish the fines that were anciently paid to expedite or delay law proceedings and procure favor. We said that the provision was never intended to guarantee the right to litigate entirely without expense to the litigants, nor to impose upon the public the entire burden of the expense of the maintenance of the courts. 168 P. at 55. The Court cited with approval State v. Judges, 21 Ohio St. 1, 12 (1871), stating that the court knew of no constitutional provision that would "forbid exacting from persons requiring and who are especially benefitted by the performance of official services, a reasonable compensation therefor, to be paid into the public treasury to reimburse the public for the expense incurred in providing and maintaining such offices." The Court noted that such officers are but the agents of the state for transacting the public business; and it is, in its nature, a matter wholly immaterial to those requiring their services, whether the amount to be paid therefor goes to the officer, or into the public treasury, provided no more is exacted than is just and reasonable for the facilities afforded, and the services performed. Id.
¶ 7 In Lee we said that the purpose of the fee is to reimburse the state for the expenses incurred in providing and maintaining all of the officers and other facilities of the court and is only intended as compensation to the state for services rendered, not only by the clerk, but by the entire court.[3] Even where the fees collected by the clerk were more than sufficient to reimburse the state for the entire expense of maintaining the clerk's office, such fees were less than the amount appropriated to pay the salaries of the justices, commissioners, marshal, and other expenses of maintaining the court. 168 P. at 56. The statute prescribed a fee to the public for services rendered by their officers and was not exacted for revenue, but as compensation; thus, it was not a revenue measure within the meaning of the constitutional requirement that such bills originate in the House of Representatives. 1917 OK 458, ¶ 32, 168 P. at 57.
¶ 8 We relied upon the Lee case in Barzellone v. Presley, 2005 OK 86, 126 P.3d 588. In that case we first looked at whether collecting jury fees as a prerequisite to accepting *66 the first motion to enter for filing and docketing in a pending action was constitutional under Art. 2 § 6. We then looked at whether the jury fee of $349 was excessive. We held that collecting jury fees as a prerequisite to accepting the first motion to enter was constitutional under Art. 2 § 6 and that the fee of $349 was not excessive when considered with the minimum average costs of providing juries. We said that the constitution was never intended to guarantee the right to litigate entirely without expense to the litigants nor to impose upon the public the entire burden of the expense of the maintenance of the courts, citing In re Lee. We noted that by 1932, the right to reasonable court fees was so generally accepted that its discussion seemed unnecessary. The imposition of such fees was determined not to be a denial or sale of justice within the meaning of Art. 2 § 6 provided they were uniform, reasonable and related to the services provided. We adopted the rationale of In re Lee, stating that the purpose of the jury fee is to reimburse the state for the expenses incurred in providing and maintaining all of the officers and other facilities of the court, and that it is intended as compensation to the state for services rendered, not only by the clerk, but by the entire court. We said that court fees compensate for the expenses incurred in providing and maintaining all of the court officers and facilities. Id., fn. 56.
¶ 9 In 2004, this Court looked at the right to access to the courts provision in Mehdipour v. State Dept. of Corrections, 2004 OK 19, 90 P.3d 546. There we looked at the "three strikes" rule which held that inmates who ordinarily could proceed in forma pauperis were required to prepay filing fees in civil proceedings if they previously had filed three or more meritless civil lawsuits. We held that the statute was not unconstitutional on either right of access to the courts or due process grounds. We noted that such a statute does not close the courthouse door to inmates who frequently file cases, but rather it merely prohibits them from enjoying in forma pauperis status. We stated that Art. 2 § 6 was not intended to guarantee the right to litigate entirely without expense to the litigants, nor to impose on the public the entire burden of the expense of the maintenance of the courts, citing In re Lee. Mehdipour, p. 554, ¶ 20. We stated that court costs are imposed primarily to recoup costs for the state and they serve as a mechanism for judicial resource allocation. Id., fn. 45.
¶ 10 The rationale of these cases is that the purpose of the court fees is to reimburse the state for money that otherwise would have to be appropriated for the maintenance of the courts. The legislature may impose court costs and not violate the open access or sale of justice clause when such costs are in the nature of reimbursement to the state for services rendered by the courts. The connection between filing fees and the services rendered by the courts or maintenance of the courts is thus established.
¶ 11 Oklahoma is not alone in requiring that court filing fees must be related to services rendered by the courts or maintenance of the courts. To the same effect as In re Lee, supra, is Cook v. Municipal Court of Pine Bluff, 287 Ark. 382, 699 S.W.2d 741 (1985). The highest courts in a number of states having similar open access to the courts provisions in their constitutions have held that filing fees that go to fund general welfare programs and not court-related services are unconstitutional.[4]
*67 ¶ 12 The Supreme Court of Illinois in 1984 struck down as unconstitutional a $5 filing fee charged in dissolution of marriage cases to fund a domestic violence program. Crocker v. Finley, 99 Ill.2d 444, 77 Ill.Dec. 97, 459 N.E.2d 1346 (1984). That court held that using court fees to fund a general welfare program of the state violated the free access and due process clauses by imposing an unreasonable burden on litigants. Earlier, the Illinois court had upheld a $1.00 fee imposed on every litigant for the maintenance and operation of the county law library, finding that the presence of the law library was conducive to the administration of justice and may have constituted an improvement to the court system. Ali v. Danaher, 47 Ill.2d 231, 265 N.E.2d 103 (1970). In 1986, the Illinois Supreme Court reaffirmed the Crocker decision, holding that a fee applied to marriage licenses was unconstitutional as a denial of due process where the statute required the county clerk to pass a portion of the marriage license fee to the Domestic Violence Shelter and Service Fund. Boynton v. Kusper, 112 Ill.2d 356, 98 Ill.Dec. 208, 494 N.E.2d 135 (1986). In Zamarron v. Pucinski, 282 Ill.App.3d 354, 218 Ill.Dec. 23, 668 N.E.2d 186 (1996) the Illinois Court of Appeals upheld the constitutionality of an act that imposed a surcharge on civil litigation filing fees to fund court automation because the fee was court-related. In Mellon v. Coffelt, 313 Ill.App.3d 619, 246 Ill.Dec. 422, 730 N.E.2d 102 (2000) the Illinois Court of Appeals upheld as constitutional a filing fee charged to litigants to support a court-annexed mandatory arbitration program. Likewise, the Supreme Court of New Hampshire upheld a mandatory $50.00 fee charged to each party under a temporary superior court rule requiring mandatory alternative dispute resolution against a challenge that it violated state constitutional provision guaranteeing the right to obtain justice freely. Lamarche v. McCarthy, 158 N.H. 197, 965 A.2d 992 (2008). The validity of such fees in these cases depended on whether they were deemed "court-related."
¶ 13 The Florida Supreme Court upheld a statute that allocated an excess fee of $3.00 for maintenance of a county law library, finding that a county law library is essential to the administration of justice today and that it was appropriate that its cost be assessed against those who make use of the court systems of the state. Farabee v. Board of Trustees, Lee County Law Library, 254 So.2d 1 (Fla.1971). The court distinguished and receded from Flood v. State, 95 Fla. 1003, 117 So. 385 (1928) which had held a fee to fund law libraries unconstitutional. The Farabee court pointed out that the distinguishing point in Flood was that the balance of the funds were to be used for general county purposes as directed by the board of county commissioners and because of that, it could not be said that the fee levied was a cost of the administration of justice.
¶ 14 The Louisiana Supreme Court, in Safety Net for Abused Persons v. Segura, 692 So.2d 1038 (La.1997), struck down a statute that directed the clerk of two city courts and two municipal courts to collect an additional fee of $30.00 in civil and criminal cases to be deposited into a special fund to benefit a private non-profit corporation that had contracted with the state to provide counseling and shelter for domestic abuse victims, a 24-hour hotline, domestic abuse prevention programs and rape crises intervention, among other services. The court determined that the charge was a tax rather than a fee because the money went, not to court services or to any other entity associated with the judicial system, but to a private nonprofit corporation to be used at its discretion for domestic violence programs. The court observed that such charge is not a fee assessed to defray the expenses of litigation or to support the court system, but rather it was a revenue-raising measure designed to fund a particular social program. 692 So.2d at 1041. The Louisiana court chose to follow the trend of courts that limit the imposition of court fees to instances where such fees actually fund functions of the judicial system. It said that where there is a statute imposing a tax on all civil filings to fund a program far-removed *68 from the judicial process, it must fail as imposing an unconstitutional filing fee in violation of the right of access to the courts and the separation of powers doctrine.
¶ 15 The Supreme Court of Texas rejected a statute that raised the filing fee to $75 and directed that $40 of it be forwarded to the state's general revenue fund. In LeCroy v. Hanlon, 713 S.W.2d 335, 342 (Tex.1986), the court held that filing fees and taxes may be imposed only for purposes relating to the operation and maintenance of the courts and may not be forwarded to the state's general revenue fund. The court determined that this constituted a general revenue tax on the right to litigate because the money went to other statewide programs, outside the judiciary. The court stated that charging litigants who are able to pay a reasonable fee for judicial support services does not violate the open-courts provisions. Though such fees interfere somewhat with access to the courts, they are permitted because they go for court-related purposes. The court said that filing fees that go into state general revenues to pay for other programs besides the judiciary are unreasonable impositions on the Texas constitution's right of access to the courts because the fees can be spent on programs other than the judiciary. Id.
¶ 16 The recurring element in these cases is that fees or costs that are not deemed to be for court-related purposes are violative of the open access to the courts guarantee. The upshot is that such fees, whatever they are called, impose an unreasonable burden on litigants. Cf. Crocker v. Finley, 99 Ill.2d 444, 77 Ill.Dec. 97, 459 N.E.2d 1346 (1984). A connection between filing fees imposed and the services rendered by the courts or for maintenance of the courts is required.
¶ 17 Accordingly, we must determine whether the fees complained of in the case at bar violate the Oklahoma Constitution's guarantee of access to the courts by determining whether such fees are for the purpose of reimbursing the state for maintenance of the courts or for services rendered by the courts. Mr. Fent has not challenged the reasonableness of the filing fees, but rather challenges the transfer of a portion of the filing fees in civil cases to certain non-judicial programs.
¶ 18 We turn to the specific funds complained-of by Mr. Fent:

I. The Voluntary Registry and Confidential Intermediary Program and the Mutual Consent Voluntary Registry established pursuant to the Oklahoma Adoption Code by Laws 1997, c. 366 § 46, effective November 1, 1997.
¶ 19 The Mutual Consent Voluntary Registry is codified at 10 O.S.2001 § 7508-1.2 of Oklahoma's Adoption Code, under Adult Adoptee Services. The Department of Human Services (DHS) is directed to establish and administer, either directly or through a contractor, a voluntary registry where eligible persons may indicate their willingness to have their identity and whereabouts disclosed to each other under specified conditions. Section 7508-1.3 establishes a Confidential Intermediary Search Program that may be used by eligible persons to locate an adult biological relative with whom contact has been lost through adoption or termination of parental rights. DHS may charge the person initiating the search for the actual expenses incurred and also a reasonable fee to compensate the confidential intermediary and for the administration of the program. The program may be operated by DHS or outsourced.

II. Child Abuse Multidisciplinary Account Fee created by Laws 2000, ch. 38 § 2, formerly 10 O.S. Supp.2008 § 7110.1, renumbered by Laws 2009, HB 2028, ch. 233 § 295, emerg. eff. May 21, 2009, as Title 10A O.S. § 1-9-103.
¶ 20 The Child Abuse Multidisciplinary Account (CAMA) is a revolving fund in the Department of Human Services (DHS) to be administered by DHS for the benefit of the children of Oklahoma.[5] The stated purpose *69 of the act is to ensure coordination and cooperation between all agencies involved in order to increase the efficiency in handling child sexual abuse or child abuse and neglect cases and to minimize the stress created for the child by the legal and investigatory process, as well as formalize a case review process. Section 1-9-102 (formerly 10 O.S. § 7110) directs each district attorney, in coordination with the child abuse training and coordination council, to develop a multi-disciplinary child abuse team in each county which shall intervene in reports involving child sexual abuse or child physical abuse or neglect. Wherever feasible, law enforcement and child welfare shall conduct joint investigations, develop a written protocol for investigating such cases and interviewing child victims.
¶ 21 The CAMA fund is to be made available to eligible coordinated multidisciplinary child abuse teams, non-urban child advocacy centers, mid-level non-urban child advocacy centers and urban child advocacy centers. The team members of the child abuse teams are: 1) mental health professionals; 2) law enforcement officers; 3) medical personnel; 4) DHS Child Protective Services personnel and 5) the district attorney or assistant district attorney.[6]

III. The Office of the Attorney General Victim Services Unit created by Laws 2005, ch. 348 § 1, effective July 1, 2005, amended Laws 2007, ch. 156 § 6.
¶ 22 Title 74 O.S. Supp.2008 § 18p-1 creates a Victim Services Unit within the office of the Attorney General. The duty of the unit is to provide services for those who require domestic violence or sexual assault services through an agency, organization, facility or person that offers shelter residential services or support services, which may include counseling, case management, referrals or other similar services to victims or survivors of domestic abuse, sexual assault or stalking. Section 18p-3 authorizes and directs the attorney general to enter into agreements with and to contract for the shelter and other services that are needed for victims of domestic abuse, sexual assault or batterers intervention programs.
¶ 23 These three programs, while laudable, are not related to services provided by the courts for which reimbursement to the State is permitted by imposing fees on those making use of the courts. These three programs are not for the maintenance or support of the court system, nor do they defray expenses of the court system. Though such programs may indisputably be worthwhile, and the provision of such services necessary, they do not serve a judicial or even a quasi-judicial function. The possibility that some persons who seek these services may eventually seek redress through the court system and that these programs may enable some of the persons to gain access to the judicial process is too remote and speculative. Cf. Safety Net for Abused Persons v. Segura, 692 So.2d at 1043-1044.
¶ 24 The three programs are social welfare programs under the operation of the executive branch of government. The worthiness or the desirability of these programs is not the issue before the Court today. These programs have been deemed worthy of creation by the legislature. It is the funding of these programs through the use of fees imposed on litigants that is impermissible. The legislature has imposed a fee or tax on those making use of the courts and has directed the court clerks to deposit those funds to the credit of these programs. The challenged *70 statutes require the judicial branch of government to collect monies to be used to help fund social welfare programs operated by the executive branch of government. The courts may not be a tax collector for the executive branch of government.[7]
¶ 25 The complained-of fees that are imposed upon litigants filing civil cases in Oklahoma do not fund functions of or maintenance of the courts. We hold that the open access to the courts is violated if persons seeking to litigate in court are assessed and required to pay for programs that have no relation to the services being provided or to the maintenance of the courts.[8] While litigants should certainly have to bear a portion of the costs of operating the courts, they should not bear the burden of funding unrelated state programs.
¶ 26 Today's decision finding 28 O.S. § 152(D)(E)(F) and 28 O.S. § 152.1(B) unconstitutional calls for prospective application. Ordinarily, an unconstitutional statute confers no rights, creates no liability, and affords no protection. Yet a well-recognized and well-reasoned exception to this rule is that a declaration of a law's constitutional invalidity should not be applied so as to work a hardship or impose liability upon a public official who has acted in good faith and relied on the statute's validity before a court has declared it invalid or before another proper official has given notice that the statute fails to conform to the fundamental law. Liddell v. Heavner, 2008 OK 6, 180 P.3d 1191, 1203-04, citing Bd. of Comm'rs of Pottawatomie Co. v. A.C. Davis & Sons, 1939 OK 33, 184 Okla. 258, 86 P.2d 782, 783. When an invalid statute calls for a compulsory discharge of statutory duties by public officials who rely on the presumptive validity of statutes, this Court may give its pronouncement purely prospective effect. Okla. Education Ass'n, Inc. v. Nigh, 1982 OK 22, 642 P.2d 230, 239. The court clerks of the 77 counties were entitled to rely on the basic presumption of constitutionality of 28 O.S. Supp.2008 § 152(D),(E) and (F) and § 152.1(B). Cf. Wade v. Bd. Of Comm'rs of Harmon Co., 1932 OK 724, 161 Okla. 245, 17 P.2d 690; Bd. Of Comm'rs of Pottawatomie Co. v. A.C. Davis & Sons, 1939 OK 33, 184 Okla. 258, 86 P.2d 782.

ATTORNEY FEES
¶ 27 Mr. Fent asks for attorney fees under the "common fund/benefit" theory. The common fund doctrine is an exception to the general rule that attorney fees are not recoverable absent some statutory authority therefor or an enforceable contract. Oklahoma Tax Commission v. Ricks, 1994 OK 115, 885 P.2d 1336, 1339. When an individual's efforts succeed in creating or preserving a fund that benefits similarly situated non-litigants, equity powers may be invoked to charge that fund with attorney fees for legal services rendered in its creation or preservation. Id. The created or preserved fund must be brought under the direct supervision of the court. Id. The idea is that those who benefit from the fund's preservation should contribute to the expense of litigation. In the case at bar, there is no fund from which attorney fees can be paid  this was not a suit brought in order to preserve or protect a fund that benefits the petitioner and others. In State ex rel. Poulos v. State Bd. of Equalization for the State of Oklahoma, 1982 OK 68, 646 P.2d 1269, we upheld a challenge to the constitutionality of the system of ad valorem property taxation in all of the 77 counties in Oklahoma as implemented by the Oklahoma Tax Commission and the State Board of Equalization in an original proceeding before this Court. We found that because no common fund under the control of this Court was created as a result of the litigation, there was not a fund out of which *71 we could order attorney fees to be paid. Id. at p. 1275.
¶ 28 This opinion shall be prospective and become effective on the date it becomes final.

DECLARATORY RELIEF GRANTED.
¶ 29 CONCUR: TAYLOR, V.C.J., HARGRAVE, OPALA, KAUGER, WATT, COLBERT, JJ.
¶ 30 DISSENT: WINCHESTER (BY SEPARATE WRITING), REIF (JOINS WINCHESTER, J.), JJ.
¶ 31 DISQUALIFIED: EDMONDSON, C.J.
WINCHESTER, J., with whom REIF, J., joins, dissenting:
¶ 1 The majority opinion grants Mr. Fent's application to assume original jurisdiction and declares unconstitutional 28 O.S.Supp. 2008 § 152(D)(E)(F) and § 152.1(B).[1] I would deny his application because he has not shown that commencing a case in the district court is an inadequate remedy.
¶ 2 This Court's opinion in Keating v. Johnson, 1996 OK 61 ¶ 10, 918 P.2d 51, 56, is particularly instructive in the case now before the Court: "A fairly consistent theme running through most of our cases where original jurisdiction has been assumed has been that the matter must be affected with the public interest and there must be some urgency or pressing need for an early determination of the matter." Although Mr. Fent contends that urgency or pressing need is present in this matter because these funds are continuing to be collected, the Child Abuse Multidisciplinary Account was imposed starting in 2000,[2] the adoption fee was imposed in 1997,[3] and the victim service unit fund was enacted in 2007.[4]
¶ 3 Like the facts in Keating, this dispute is clearly publici juris because of the conflict between the powers of State government; in this case, the legislative branch and judicial branch. In Keating the Court refused to assume original jurisdiction. The Court observed that the petitioners had based their claim solely on its public nature, but failed to make any showing there is any urgency or immediacy involved that would require a speedy determination of the controversy. The Court added that its primary function is appellate in nature. Keating, 1996 OK 61, ¶ 18, 918 P.2d at 58.
¶ 4 The better practice would be to allow all the agencies involved to present their evidence and arguments to the district court, so the court may determine which fees now being collected by the court clerks are court-related, and whether a connection exists between the filing fees imposed and the services rendered by the courts. Due process requires this. Because these issues should be presented in the district court, I respectfully dissent from the Court's assuming original jurisdiction.
NOTES
[1] Mr. Fent essentially is arguing that the legislature should act constitutionally, through appropriations, to fund the three programs rather than imposing fees that are in effect taxes on litigants in civil cases.
[2] The dissent agrees that the matter before the Court is publici juris but argues that there is no urgency involved that would require a speedy determination of the matter in this Court, relying on Keating v. Johnson, 1996 OK 61, 918 P.2d 51. In Keating, this Court declined to assume original jurisdiction where the issue was the constitutionality of appointments to certain boards and commissions. In the case at bar, the issue affects the funding of all of the courts in the state and affects all of those who file lawsuits in those courts. Likewise it affects the funding of the three legislatively-established programs administered by the attorney general and DHS. The matter is of sufficient urgency to necessitate a speedy determination by this Court before commencement of the legislative session.
[3] The Court specifically considered the Governor's message to the legislature on the subject, as indicative of legislative intent:

"Every state agency with a few exceptions should be made at least partially self-sustaining. The courts which are a necessary agency for the peaceable settlement of civil controversies, and essential for good government, should not be supported entirely by the taxpayers. The litigants in civil cases should at least bear a part of these burdens. There is no reason why the peaceable man who settles his matters without legal controversies should be taxed to furnish this legal luxury entirely to the litigious citizen. The record shows that it costs the state on an average of about $50 for every civil case appealed to the Supreme Court. I accordingly recommend that a docket fee be taxed in the sum of $25 as a part of the costs in every such case ..." 168 P. at 56.
[4] A few appellate courts that have considered due process/equal protection challenges have upheld similar statutes after finding a rational basis between the public interest to be served and the means to accomplish them. See Browning v. Corbett, 153 Ariz. 74, 734 P.2d 1030 (Ariz.App. 1987) (fees for domestic violence shelter fund and child abuse prevention and treatment fund upheld against due process/equal protection challenge; the court stated that access to courts was not prohibited because an indigent seeking a divorce in Arizona can obtain a waiver of the filing fees); Gange v. Clerk of Burleigh County District Court, 429 N.W.2d 429 (N.Dak.1988) ($50 fee charged to both parties in a divorce action to fund state displaced homemaker program upheld against due process/equal protection challenge; court noted that the fee would not prevent anyone from getting a divorce because the fee could be waived if the person were indigent); and Villars v. Provo, 440 N.W.2d 160 (Minn.App.1989) (fees to fund displaced/homemaker/battered women programs upheld against due process/equal protection challenge; court noted that section of Minnesota constitution which requires that justice be obtained "freely" and "without purchase" was not violated because that clause was aimed at the corrupt practice of taking bribes and exacting legal fees for the administration of justice).
[5] CAMA shall consist of all monies received by DHS pursuant to §§ 1-9-103 and 1-9-104 of Title 10A (formerly §§ 7110.1 and 7110.2 of Title 10) and all monies accruing to the credit of the fund are deemed to be appropriated and shall be budgeted and expended by DHS for the purposes provided in §§ 1-9-102 and 1-9-104 of Title 10A. Expenditures from the account are made upon warrants issued by the State Treasurer against claims filed as prescribed by law with the director of state finance for approval and payment. The monies deposited in the CAMA account shall at no time becomes monies of the State and shall not become part of the general budget of DHS or any other state agency.
[6] The functions of the multidisciplinary abuse teams are to: 1) conduct joint investigations; 2) develop protocol for investigating and interviewing child victims; 3) encourage cooperation between all involved agencies to increase efficiency and minimize stress for the allegedly abused child by the legal and investigatory process; 4) increase communication and collaboration among the professionals responsible for reporting, investigating, prosecuting and treating; 5) improve the delivery of services; 6) encourage the development of team members expertise through training; 7) formalize a case review process and standardize investigative procedures. § 1-9-102(C).
[7] Okla. Const., art. 4 § 1 provides:

§ 1. Departments of government  Separation and distinction
The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others.
[8] Because we find the statutes unconstitutional as a violation of the open access to the courts provision of the Oklahoma Constitution, we need not address Mr. Fent's due process argument.
[1] Majority Opinion, § 25, "We hold that the open access to the courts is violated if persons seeking to litigate in court are assessed and required to pay for programs that have no relation to the services being provided or to the maintenance of the courts."
[2] 2000 Okla. Sess. Laws, ch. 38, §§ 4(D), 5(B).
[3] 1997 Okla. Sess. Laws, ch. 366, § 54(C).
[4] 2007 Okla. Sess. Laws, ch. 247, § 2(F).